## UNITED STATES
v.
**BEATY CHEVROLET CO., Inc., et al.**
Civ. A. No. 1850.

United States District Court
E. D. Tennessee, N. D.
Nov. 16, 1953.

John C. Crawford, Jr., U. S. Dist. Atty., John F. Dugger, Asst. U. S. Dist. Atty., Knoxville, Tenn., for plaintiff.

J. W. Baker, Poore, Cox, Baker & McAuley, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This is a suit by the Government against the defendants, Beaty Chevrolet Company, Inc., and S. B. Beaty, to recover a forfeiture of $2,000 and damages in double the amount of $1,589.10 accruing under Title 31 U.S.C.A. § 231, as amended, commonly referred to as the False Claims Statute. Jurisdiction is conferred by 28 U.S.C., secs. 1345 and 1355, and 31 U.S.C.A. § 232.

Recovery is sought on the grounds that the defendants submitted to the Veterans' Administration a claim for payment for an automobile that included charges for a radio in the amount of $93 and seat covers in the amount of $42.50; that the Government paid for the automobile which was sold by the defendants to William P. Eubanks, a war veteran, under authority of Public Law 663, 79th Congress, 60 Stat. 910, that these two items were not received by the veteran; that the defendants executed a certificate including the named items and presented the same to the Veterans' Administration, knowing that the certificate was false, and that they thereby rendered themselves liable for the penalties provided for in the False Claims Statute.

Although the defendants admit that the invoice submitted to the Veterans' Administration included the above named items and that the veteran did not get them as a part of the purchase price that the Government paid for the automobile, they say that neither the Government nor the veteran was cheated. Their explanation is that the purchase price of the car was increased by the factory with O. P. A. approval, after the purchase order was signed by the veteran; that under the specific wording of the purchase order the veteran had the right to rescind the order or to pay the increased price; that the veteran elected not to rescind, but to take the car at the increased price and without the radio and seat covers, and that the Government by paying the $1,589.10 paid no more than the Veterans' Administration had approved and the law authorized.

The veteran signed the application for the car on September 20, 1946, and his eligibility certificate therefor was issued on July 2, 1948. On July 3, 1948, he signed the purchase order that was accepted by the defendants on the same date and which provides among other things as follows:

"It is further understood and agreed: The order on the reverse side hereof is subject to the following terms and conditions which have been mutually agreed upon:

"1. Chevrolet motor division—General Motors Sales Corporation has reserved the right to change the list price of new Chevrolet motor vehicles without notice and in the event that the list price of the new car ordered hereunder is so changed, the cash delivered price, which is based on list price effective on the day of delivery, will govern in this transaction, but if such cash delivered price is increased the purchaser may, if dissatisfied with such increased price, cancel this order. * * *"

The purchase order contract included the following:

"1948 Chevrolet Fleetline Aerosedan (2-door).

| | |
|---|---:|
| F.O.B. | $1225.00 |
| Freight | 77.00 |
| Factory Delivery & Handling | 73.00 |
| Radio installed | 93.00 |
| Seat Covers installed | 42.50 |
| 15″ wheels and tires installed | 15.75 |
| Two Tone Paint | 9.85 |
| Heater and defroster | 53.00 |
| Net total | $1589.10" |

The purchase order contract was sent to the Veterans' Administration and approved and the automobile ordered from

the factory. The veteran's need for an automobile was urgent, due to the difficulty he was experiencing in getting to his work at Oak Ridge from his home in Knoxville. The veteran visited the defendants from time to time at their place of business between the time of the purchase order contract and the time of delivery, urging as quick delivery of the car as possible.

A few days before the automobile arrived from the factory the O. P. A.-approved retail price was increased by the factory in the sum of $115, plus $6 additional Federal excise tax. Upon arrival of the automobile Eubanks was notified and immediately came to the defendants' place of business. He was advised by Pless, the salesman who handled the transaction for the defendants, of the price increase and was told that due to the increase the automobile could not be delivered for the original price of $1,-589.10 with the radio and seat covers included. He was likewise advised that it was defendants' understanding that the total delivery price of the automobile could not exceed $1,600 under the Veterans' Administration regulations. Eubanks wanted the car in any event and was willing to take it without radio and seat covers. The radio and the seat covers, listed to cost $135.50, were omitted. This left the company owing $14.50, or the difference between the cost of those accessories and the factory increase of $121. Eubanks was allowed to choose another accessory—wheel rings—which carried a retail price of $15. This caused the total price of the automobile to equal $1,589.60, or 50 cents more than the expenditure approved by the Veterans' Administration. The wheel rings were reduced to $14.75 and the price of the 15-inch wheel tires which were charged at $15.75 on the original purchase order, were reduced to $15.50. This made the total bill $1,589.10, or the exact amount of the expenditure approved by the Veterans' Administration. An invoice was sent to the Veterans' Administration which conformed to the original purchase order, including radio and seat covers at

$93 and $43.50, and called for the payment of $1,589.10. The invoice did not include the wheel rings or the increased purchase price of the automobile. The date of the invoice is August 27, 1948. The defendants gave Eubanks an invoice on the same date showing the changes.

The invoice sent to the Veterans' Administration contained the following statement signed by Eubanks and the Beaty Chevrolet Company by its President, S. B. Beaty:

"I, William P. Eubanks, accepted delivery on the above car this 27th day of August, 1948.
                    "William P. Eubanks"
"I certify that the above bill is correct and just; that payment therefor has not been received.
        "Beaty Chevrolet Company Inc
        "By S. B. Beaty
                          "President."
"I hereby acknowledge receipt of the automobile or other conveyance identified below and certify that the total purchase price, including special attachments and devices listed above required to operate the vehicle safely and any tax which is reflected in the purchase price does not exceed $1,600.00
                    "William P. Eubanks"

The factory price increase did not increase the profit of the Beaty Chevrolet Company. Although Mr. Curley, the Veterans' Administration representative who testified in the case, stated that the Veterans' Administration would not have approved defendants' invoice for payment if its representatives had known that it did not conform to the purchase order, he added that in all probability they would have approved the voucher for payment if request had been made for a change of the purchase order contract so as to eliminate the radio and seat covers.

Pless apparently had several things uppermost in his mind in consummating the transaction. He did not want to delay the veteran in getting possession of the car after it was delivered by the

factory to the Beaty Chevrolet Company. He felt that if he undertook to get the purchase order contract revised by the Veterans' Administration this would cause a delay of possibly a month, or longer. Again, he was of the belief that the purchase price of the car and accessories could not exceed $1,600. Also, he was of the opinion that so long as he gave full value to the veteran for the price charged, kept the price charged within the $1,600 limit, and obtained the veteran's consent to the substitutions heretofore detailed such procedure would meet the requirements of the law and regulations of the Veterans' Administration. Further, he was of the opinion that so long as his company did not charge in excess of $1,600 and did not overcharge for the car and the accessories that were purchased, the company was within its rights in eliminating the seat covers and radio and making the substitutions without securing approval of the Veterans' Administration. He believed that since the veteran had an eligibility certificate for the car and the veteran was furnished with an invoice showing the price of the car, the transportation charge, the tax, the paint job, the various accessories and the price covering each item on the day the car and the accessories were received, and the veteran agreed to the elimination of the seat covers and the radio prior to the time the trade was consummated, that such procedure was in compliance with the substance, as well as the spirit, of the law and the regulations of the Veterans' Administration.

Not realizing the seriousness of the certificate of his company on the voucher that included the radio and seat covers and that was submitted to the Veterans' Administration, he failed to notify the company that these items of the original purchase order contract had not been delivered to the purchaser. This was an act of poor judgment upon the part of Pless. S. B. Beaty, President of the Beaty Chevrolet Company, and the one who signed the certificate for the company at the time, or prior to the time he signed the certificate, did not know that there was a discrepancy between the voucher and the equipment delivered. He was unaware that the certificate contained the incorrect statement.

It is obvious that the defendant, Beaty Chevrolet Company, in submitting the voucher for payment, which included the radio and seat covers when the purchaser, Eubanks, did not receive the seat covers and the radio in the trade, submitted a claim to the Government for payment which, from a purely technical point of view, contained a false statement. It was not a false claim in the sense of being padded or fraudulent, for the reason that the amount claimed, namely, $1,589.10, represented the exact market value of the automobile and accessories delivered. The veteran lost nothing by the substitutions. He testified that he felt he had been treated fairly and that he had received in full that to which he was entitled.

The Government agreed to pay up to $1,600 for the automobile and its accessories. The Government therefore has not sustained any loss.

The Court is of the opinion and finds as a fact that neither Pless nor the defendants intended to defraud the Government as a result of any of the acts of Pless; that although Pless used very bad judgment in failing to bring to the attention of the Veterans' Administration the increase of factory price on the car subsequent to the date of the purchase order contract, the inclusion of the accessory not listed in the purchase order and the elimination of the seat covers and radio without prior approval of the Veterans' Administration, he did not intend to cheat or defraud the Government in causing his company to submit the voucher dated August 27, 1948, to the Veterans' Administration for payment.

The Court reviewed in detail the principles that are applicable to and decisive of this case in the case of United States v. Park Motors, Inc., D.C., 1952, 107 F. Supp. 168. One of the factual differences between the Park Motors case and the instant case is that Park Motors, after

the receipt of notice of the factory price increase, communicated with a representative of the Veterans' Administration, advised him of such increase and received from such representative assurance in substance that it was all right to charge the veteran the increased purchase price so long as his voucher conformed with the amount shown in the original purchase order contract. The voucher in the Park Motors case also contained a false statement, but it was found that Park Motors acted in good faith in the transaction. In the instant case Pless had not undertaken to clear the matter with the Veterans' Administration but made adjustments with the consent of the veteran so as to make the total purchase price the same as the purchase price in the purchase order contract. Though he resorted to self-help, it was his intention to charge the Government for only that which the veteran received.

■ The quoted provision of the purchase order contract heretofore mentioned amounted to at least an implied consent of the Government for an increase of price by the seller in the event of an increase by the factory, so long as the increase was within the $1,600 limit. This provision of the contract supported the belief of the witness, Pless, that his company had a right to increase the price under the terms of the purchase order contract. The irregularity of the company, however, was in its failure to notify the Government of the factory price increase and to obtain Government approval of the adjustments made necessary by that increase. However, the Court is of the opinion and finds that the failure of defendants to pursue this course was due to error of judgment on the part of a company employee, rather than to any intention on the part of the defendants to defraud the Government.

■ The Government vigorously contends that presentation of the invoice with a false statement in the certificate renders the defendant company liable without the necessity of holding that the certificate containing false information was made with intent to defraud the Government. With this contention the Court does not agree. There was no false claim here within the meaning of the False Claims Statute.

■ As just indicated, the Court is of the opinion and holds that the claim filed by the defendants and paid by the Government was not a false claim within the meaning of the statute. The statute prohibits the filing of a certificate containing false information to obtain the payment of a claim which is "false, fictitious or fraudulent." Inasmuch as the defendants delivered value to the veteran to the full extent of the sum required, there was no violation of the False Claims Act. The defendants did not attempt to obtain something to which they were not entitled.

Accordingly, an order will be prepared dismissing the complaint.