**UNITED STATES of America, Plaintiff,**

v.

**Thomas A. JOHNSTON, Defendant.**

**Civ. No. 6528.**

United States District Court
W. D. Oklahoma.
Feb. 13, 1956.

526

Paul W. Cress, U. S. Atty., and George Camp, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Young, Young & Young, Sapulpa, Okl., for defendant.

WALLACE, District Judge.

The Government brings this action under the false claims act, Title 31 U.S.C.A. § 231, to recover civil damages for salary payments made to the defendant while he was employed as a physician for the Department of the Air Force; and, urges that each salary check paid to the defendant constituted a false claim against the Government inasmuch as each check "was paid upon presentment by the defendant because the Government hired the defendant in reliance on his false representations as set forth in said application, and the Government paid each claim or voucher in the mistaken belief that the defendant was qualified and competent to render the services for which he presented the claims."[1]

The following facts are undisputed: On June 4, 1953, in the federal district court for the Western District of Texas, San Antonio Division, the defendant pleaded guilty to an indictment charging him with knowingly and wilfully concealing a material fact in his "Application for Federal Employment—Standard Form No. 57, U. S. Civil Service Commission" by answering "no" to the question "Since your 16th birthday, have you ever been convicted, or fined or imprisoned, or placed on probation, or have you ever been ordered to deposit bail, for the violation of any law, police regulation or ordinance (excluding minor traffic violations for which a fine of $25.00 or less was imposed) ?" when previously to such application on November 7, 1949, in the County Court of Jim Wells County, Texas, the defendant had pleaded guilty to the offense of "Illegal Practice of Medicine" and was punished by confinement in the County Jail for four hours and fined $50.[2] Upon these facts the defendant moves to dismiss; and, the Government moves for summary judgment.

1. The Government seeks a total of $58,026.40. Such sum consists of double the salary paid of $5013.20 plus $2,000 for each of the 24 pay checks.

2. The second part of the question to which the false answer was given provided: "If your answer is 'yes', list all such cases under Item 38 below. Give in each case (1) the date; (2) the nature of the offense or violation; (3) the name and location of the Court; (4) the penalty imposed, if any, or other disposition of the case. If appointed your fingerprints will be taken."

The defendant asserts that the complained of acts do not fall within the purview of the relied upon statute inasmuch as a false, fictitious, or fraudulent *application* is not mentioned in the language of the statute.[3] Moreover, the defendant urges that inasmuch as there is no complaint as to the quality of the services he rendered, and since he did actually perform work for the salary paid, the Government has not been damaged and the claims for salary cannot be deemed false or fraudulent.[4]

Under the instant enactment one "who shall make or cause to be made * * * any claim upon or against the Government of the United States * * knowing such claim to be false, fictitious, or fraudulent" becomes civilly liable to the Government. Admittedly, the statute is penal in character and should be strictly construed.[5] Consequently, not every misrepresentation in an employment application would of itself lay a predicate for an action under this "false claims" section.[6] However, such does not mean that a claim having its genesis in an employment application cannot fall within this statute's objectives. Where there are material misrepresentations which go directly to the competency and general qualification of the applicant to perform the applied for work and where clearly the applicant would not have been hired, or his employment continued, but for such misrepresentations, the claims for salary, under this continued state of concealment, are false and fraudulent and fall within this statute's scope. Thus, in the instant suit, although the Government's action was conceived in the employment application, the underlying basis of the Government's grievance is that the Government paid claims "in the mistaken belief that the defendant was qualified and competent to render the services for which he presented the claim"; and the lack of professional qualification and competency is the gist of the false and fraudulent claims.[7] Moreover, in determining

---

3. The statute imposes civil liability for any false, fictitious, or fraudulent *claim*, or where to obtain payment or approval of a claim "any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry" is used.

4. Initially, the defendant was given a rating of G.S. 11 and paid at the rate of $5,400 per year. Subsequently, he was advanced to G.S. 12 and paid at the rate of $6,400 annually.

5. United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 1942, 131 F.2d 545.

6. Cf. Cahill v. Curtiss-Wright Corporation, D.C.Ky.1944, 57 F.Supp. 614, 616, wherein the court said: "* * * It is likewise settled that any kind of fraud or deceit on the part of a person in his dealings with the Government is not enough, but that the fraud must be used in connection with making a claim against the Government. [Citing authority.]" Also, cf. United States v. Beaty Chevrolet Co., Inc., D.C.Tenn.1953, 116 F.Supp. 810, wherein the court held that although a certificate of purchase listed certain accessories as being included in the sale of a car to a war veteran which were not actually included, that inasmuch as full value was delivered and the dealer had not attempted to obtain something to which it was not entitled, the submitted claim was not false or fraudulent.

7. As stated in the per curiam opinion in United States ex rel. Brensilber v. Bausch & Lomb Optical Co., footnote 5, supra, 131 F.2d at page 546: "* * * We assume, that is, that if the claimant has once procured a contract by fraud, any claims he may thereafter present are 'fraudulent,' whether or not they fall within its terms. * * *" Also, cf. United States ex rel. Marcus v. Hess, 1942, 317 U.S. 537, 543, 63 S.Ct. 379, 384, 87 L.Ed. 443 wherein the court held that collusive bidding "did not spend itself with the execution of the contract. Its taint entered into every swollen estimate which was the basic cause for payment of every dollar paid by the P.W.A. into the joint fund for the benefit of respondents. The initial fraudulent action and every step thereafter taken, pressed ever to the ultimate goal—payment of government money to persons who had caused it to be defrauded."

whether there were false and fraudulent misrepresentations touching qualification and competency, it is no defense to urge that the services actually rendered were satisfactory. The Government has the right to determine the class of persons with which it deals,[8] and if it is clear that but for the misrepresentations and concealments the employee in nowise would have been employed or retained in such employment, submitted claims for salary must be considered corrupted with falsity and fraud.[9]

 It is immaterial that the Government has not alleged, and doubtless, cannot prove the exact monetary sum it has been damaged by virtue of any such false claims. The statute in allowing $2,000 for each fraudulent claim amounts to a Congressional declaration of liquidated damages, and may be awarded when a false or fraudulent claim is established, without allegation or proof of specific damage.[10]

Although it is undisputed that the defendant failed to disclose in the application in question that he previously had pleaded guilty to the illegal practice of medicine, the court cannot say that such taken alone unequivocally establishes that the defendant was not professionally qualified to act as a physician and surgeon for the Government or that the Government would not have employed the defendant. Extenuating circumstances could have existed whereby at the time of the application the defendant was qualified to fill the applied for position and the Government even with knowledge of the previous law violation might have employed the defendant. It is not the purpose of summary judgment to dispose of litigation where some controversy over facts material to the decision exists, or where all facts necessary to resolve the issue in contest are not of record.[11] Such an issue must be resolved at a trial upon the merits. In order for the Government to demonstrate it has been the object of false and fraudulent claims, the evidence must establish that the defendant was not qualified, by generally recognized professional standards, to do the applied for work and that had the true facts been known he would not have been paid the salary checks in question.

The defendant's motion to dismiss and the Government's motion for summary judgment are hereby overruled.

8. Cf. United States v. Rex Trailer Company, Inc., 7 Cir., 1955, 218 F.2d 880, 884, affirmed 76 S.Ct. 219.

9. Cf. Dimmick v. United States, 9 Cir., 1902, 116 F. 825, 828 wherein the court in a criminal action mentioned: "* * * The character of the claim—that is to say, whether true, genuine, and honest, or false, fictitious, and fraudulent—must be determined in view of all of the facts and circumstances attending it. * * *"

10. Rex Trailer Company, Inc., v. United States, 76 S.Ct. 219, and United States ex rel. Marcus v. Hess, footnote 7, supra.

11. Significantly, the criminal violation upon which the Government relies was one brought under 18 U.S.C.A. § 1001 dealing with the making of "any false, fictitious or fraudulent *statements or representations*" to the Government, rather than under 18 U.S.C.A. § 287, the criminal statute pertaining to "False, fictitious or fraudulent claims". Also, although the defendant pleaded guilty to wrongfully denying in the employment application previous law violations, there is no evidence of record that the defendant was not a member of "The New York Academy of Science, N.Y.C.", a member of the "Association of Military Surgeons of U.S.A.—1949, Washington, D. C." or a recipient of an M.D. degree from the University of Massachusetts, as represented in the employment application.