**YOUNG–MONTENAY, INC.,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 93–5095.

United States Court of Appeals,
Federal Circuit.

Nonprecedential Opinion Oct. 21, 1993.

Precedential Opinion Feb. 2, 1994.

Andrew J. Kilpatrick, Jr., Andrew J. Kilpatrick, Jr., P.A., of Jackson, Mississippi, argued for plaintiff-appellant.

Arnold M. Auerhan, Attorney, Commercial Litigation Branch, Department of Justice, of Washington, D.C., argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Jeanne E. Davidson, Assistant Director.

Before MICHEL, LOURIE and SCHALL, Circuit Judges.

MICHEL, Circuit Judge.

Young–Montenay, Inc. ("Young–Montenay") sought to recover costs incurred because of alleged government-caused delays on a boiler renovation project for the Department of Veterans Affairs ("VA"). Upon denial of its claims by the contracting officer, Young–Montenay sought relief from the United States Court of Federal Claims. In an amended answer, the government raised a special plea in fraud pursuant to 28 U.S.C. § 2514, and asserted counterclaims based upon the False Claims Act, 31 U.S.C. § 3729, and the Contract Disputes Act, 41 U.S.C. § 601 *et seq.* (1993). On January 6, 1993, the court granted the government's motion for summary judgment on its special plea in fraud and on both counterclaims. *Young–Montenay, Inc. v. United States*, Order No. 90–3862C. The court awarded treble damages in the amount of $147,000.00 and a statutory penalty of $5,000.00, pursuant to 31 U.S.C. § 3729. Young–Montenay now appeals the summary judgment, seeking remand as to both entitlement and quantum for trial on the merits on all three claims. We affirm the judgment in its entirety.

## BACKGROUND

On October 27, 1982, Young–Montenay entered into a contract with the VA to perform certain renovations to boiler equipment, instrumentation and controls at the VA Medical Center in Kerrville, Texas. This dispute, however, arises over a purchase order for a new "burner package" for the VA Medical Center provided by Keeler Door–Oliver Burner Company ("Keeler") to Young–Montenay. Young–Montenay submitted to Keeler a purchase order for the burner package at a price of $104,000.00. Keeler issued its original invoice in the amount of $104,000.00. Subsequently, a dispute arose between Young–Montenay and Keeler as to whether the burner package supplied by Keeler was a complete package in accordance with the plans and specifications and whether Young–Montenay would eventually owe Keeler $153,000.00. As a result of the dispute, Young–Montenay altered the original invoice by deleting $104,000.00 from the bill and substituting $153,000.00.

Under the contract, progress payments were to be made by the government to Young–Montenay as work proceeded with the retainage of 10% until final completion and acceptance of the contract work. On January 18, 1984, Young–Montenay submitted to the VA its sixth progress payment request seeking $154,362.00. In partial support of the request, Young–Montenay submitted the altered Keeler invoice in the amount of $153,000.00.[1]

## STANDARD OF REVIEW

■ The standard of review on factual issues in an appeal from the entry of summary judgment is as follows:

> In reviewing the granting of a summary judgment by a trial court, an appellate court determine[s] for itself whether the standards for summary judgment have been met and is not bound by the trial court's ruling that there was no material dispute present in the case.

*Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). Our

---

1. Later, Keeler did issue a second invoice in the amount of $153,000.00 for the burner package.

court evaluates the conflicting evidence proffered by the parties *de novo,* in the light most favorable to the non-moving party. *The Confederated Tribes of the Colville Reservation v. United States,* 964 F.2d 1102, 1107 (Fed.Cir.1992).

## ANALYSIS

### I. Fraud.

■ Under 28 U.S.C. § 2514, the government bears the burden of proving that the claimant (1) knew the claim was false and (2) intended to deceive the government by submitting it. *McCarthy v. United States,* 670 F.2d 996, 1004, 229 Ct.Cl. 361 (1982).

In the present case, the trial court did not err in determining on this record that as a matter of law the invoice submitted in the amount of $153,000.00 by Mr. Eisenhut of Young–Montenay to the government was false and that he knew it. In his own deposition testimony of April 30, 1992, Eisenhut stated:

Q: At the time you submitted [the 6th payment request to the government on the Kerrville project], you knew that the price for the three Keeler—three Faber burners provided by Keeler was $104,000?

A: Correct.

Q: You know that because of the purchase order you submitted to Faber; correct?

A: Correct.

Q: And you may have also seen an invoice in the amount of $104,000; correct?

A: Correct.

Q: But either way you knew when you submitted the 6th progress payment to the government the actual cost to Young–Montenay of the three Faber burners was $104,000; correct?

A: Correct.

It is immaterial whether Eisenhut believed Young–Montenay would *subsequently* owe Keeler $153,000.00, for at the time of the submission of the invoice to the government, he knew Young–Montenay then owed Keeler only $104,000.00.

Nor did the trial court err in holding that Eisenhut intended to deceive the government. It is undisputed that he whited-out the price on the invoice, $104,000.00, and wrote in $153,000.00. In addition, in his deposition, he admitted that he intended to "frontload" as much as he could on the project.

Q: Now, earlier you talked about the importance of frontend loading a project; correct?

A: Correct.

Q: Was this your attempt to get money on the frontend of this project?

A: Yes, sir.

Q: So you tried to get money up front by submitting a supporting invoice in the amount of $153,000; correct?

A: Correct.

Q: Even though you knew the actual cost to Young–Montenay was $104,000; correct?

A: Correct.

Q: And that way you could get $49,000 over and above the actual cost as front end [sic] or up[-]front money; correct?

A: I think—seems like we sent the invoice in and they hadn't approved much for all the activity we had gone through, and yes, that was an attempt to get up[-]front money.

Clearly, no genuine issue of fact was shown, for there was virtually no evidence to the contrary, and the conclusory, speculative affidavits of two company officials cannot raise one.[2] Thus, pursuant to Rule 56 of the

---

**2.** Young–Montenay contended that the affidavits of Richard Sechrist and James Verberg, both former employees of Keeler, establish genuine issues of material fact for trial. In their testimony, both Verberg and Sechrist testified that they "[did] not recall why [the second invoice in the amount of $153,000.00] was submitted, however, it would not have been prepared or submitted without a valid, legitimate business reason."

See Joint Appendix at 40 and 43 respectively. Young–Montenay argued that if the second invoice correctly reflected the total cost of the burner package and if Eisenhut believed that $153,000.00 was the ultimate price he would have to pay, then Eisenhut's altered invoice was not false.

Yet, neither of the affiants personally recalled the reason for the modification of the invoice.

Rules of the United States Court of Federal Claims, the government was entitled to summary judgment on its special plea in fraud. *Paxson Elec. Co., Inc. v. United States,* 14 Cl.Ct. 634, 642 (1988), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986) (grant of summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law). The contractor's claim for its delay costs and increased expenses is extinguished under 28 U.S.C. § 2514, since section 2514 specifically provides that "any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance" of a claim forfeits that claim.

## II. False Claims.

■ In order to recover damages for violation of the False Claims Act, the government must establish that

(1) the contractor presented or caused to be presented to an agent of the United States a claim for payment;

(2) the claim was false or fraudulent;

(3) the contractor knew the claim was false or fraudulent; and

(4) the United States suffered damages as a result of the false or fraudulent claim.

*Miller v. United States,* 550 F.2d 17, 23, 213 Ct.Cl. 59 (Ct.Cl.1977).

As Eisenhut admitted, he knew the invoice was false. Thus, the only issue remaining is whether the government suffered any damages. We hold that the government was damaged by paying money before it was due to the contractor and that the trial court determined the proper amount of damages, which it lawfully trebled.

■ The False Claims Act provides civil penalties of not less than $5,000.00 and not more than $10,000.00 plus three times the amount of damages which the government sustained. 31 U.S.C. § 3729(a) (1988). In granting the government summary judgment, the trial court awarded $5,000.00 as the statutory penalty and $147,000.00 in treble damages, three times the amount of the difference between the amount of the original Keeler invoice and the amount of the altered Keeler invoice which was submitted by Young–Montenay to the VA. That is a reasonable measure of damages. No authority has been cited to mandate acceptance of the contractor's arguments for lesser measures.[3] Moreover, although the government sought only $98,000.00 in damages in its filings at the summary judgment stage, no authority has been cited to us that the trial court cannot award more so long as the trial court complies with the provisions of 31 U.S.C. § 3729, which it has. Accordingly, we affirm the trial court's award of $147,000.00.[4]

*AFFIRMED.*

Each affiant merely speculated that it "would not have been prepared or submitted without a valid, legitimate business reason." *Id.* In any event, Eisenhut should have waited to receive the second invoice from Keeler rather than altering the original invoice.

**3.** Young–Montenay does not challenge the penalty of $5,000.00, but disputes the imposition of treble damages in part because the government has allegedly not established any actual damage. According to Young–Montenay, the only damage, if any, suffered by the government would be for the loss of interest on the extra $49,000.00 ($153,000.00—$104,000.00), limited to the period of time the government was deprived of the use of its funds due to early payment.

Yet, the government properly responds that it sustained actual damages as a result of Young–Montenay's fraud. First, the government was denied the use of the overpaid money. Second, once Young–Montenay received an early payment, the contractor had less incentive to complete the project in a timely or satisfactory manner. In fact, the completion of the project was delayed over 1,180 days. Thus, the government's interest in retaining financial incentives to assure timely completion was compromised and harmed by the fraud.

**4.** No separate section discussing the government's counterclaim under the Contract Disputes Act is included in our analysis because, having upheld the Court of Federal Claims' grant of summary judgment on the government's special

plea in fraud pursuant to 28 U.S.C. § 2514 and its counterclaim under the False Claims Act, the government is precluded from further recovery under the Contract Disputes Act, for its two counterclaims merge. In any event, whether the Contract Disputes Act was violated has become moot because the government has not raised this issue on appeal.