**UNITED STATES of America, ex rel. A. Scott POGUE, Plaintiff,**

v.

**AMERICAN HEALTHCORP, INC., et al., Defendants.**

No. 3–94–0515.

United States District Court, M.D. Tennessee, Nashville Division.

Jan. 5, 1996.

Van S. Vincent, Office of United States Attorney, Nashville, TN, for United States.

Ralph W. Mello, Larry Lamont Crain, Long, Seneff & Mello, Brentwood, TN, James B. Helmer, Jr., Paul B. Martins, Helmer, Lugbill, Martins & Neff, L.P.A., Cincinnati, OH, for A. Scott Pogue.

Steven Allen Riley, Patricia T. Meador, John Baxter Enkema, Bass, Berry & Sims, Nashville, TN, for American Healthcorp, Inc.

Steven Allen Riley, Patricia T. Meador, John Baxter Enkema, Bass, Berry & Sims, Nashville, TN, for Diabetes Treatment Centers of America, Inc.

Ames Davis, Nancy S. Jones, Waller, Lansden, Dortch & Davis, Nashville, TN, for West Paces Medical Center.

*MEMORANDUM*

ECHOLS, District Judge.

Pending before the Court is Plaintiff's Motion to Reconsider, to which Defendants American Healthcorp, Inc. ("AHC") and Dia-

betes Treatment Centers of America, Inc. ("DTCA") have responded. For the reasons stated herein, Plaintiff's Motion to Reconsider is hereby GRANTED.

Plaintiff A. Scott Pogue has moved this Court to reconsider its Order of September 14, 1995, in which it granted Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pogue brought this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733 (1983 & Supp.1995), in the name of the United States pursuant to 31 U.S.C. § 3730(b)(1), asserting that Defendants were involved in a scheme by which individual physicians would refer their Medicare and Medicaid patients to Defendant West Paces Medical Center ("West Paces") for treatment in violation of federal anti-kickback and self-referral statutes, such as the Medicare Fraud & Abuse Statute, 42 U.S.C. § 1320a–7b(b) (Supp.1995). The facts of this case are fully discussed in the Memorandum and Order entered September 14, 1995, and need not be restated herein.

In its Order of September 14, 1995, the Court based its decision to grant Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted on two alternative grounds. First, the Court found that Pogue had failed to allege that any of the claims submitted by Defendant West Paces were themselves false. Second, it found that Pogue had failed to allege that the government suffered damages as a result of the submission of these claims. The Court determined that Pogue's failure to allege these facts was detrimental to his claim under the False Claims Act. In making this determination, the Court relied upon the holding of the United States Court of Appeals for the Federal Circuit in *Young–Montenay, Inc. v. United States,* 15 F.3d 1040 (Fed.Cir.1994), in which the Federal Circuit held that a plaintiff must establish the following factors in order to recover under the False Claims Act:

(1) the [defendants] presented or caused to be presented to an agent of the United States a claim for payment;

(2) the claim was false or fraudulent;

(3) the [defendants] knew the claim was false or fraudulent; and

(4) the United States suffered damages as a result of the false or fraudulent claim.

*Id.* at 1043 (citing *Miller v. United States,* 550 F.2d 17, 23, 213 Ct.Cl. 59 (1977)). As the Court found that Pogue had failed to allege facts upon which it could find that Defendant West Paces' Medicare claims themselves were false or fraudulent and failed to allege that the government suffered damages as a result of these claims, Pogue's claim under the False Claims Act was dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Pogue filed this Motion to Reconsider, arguing (1) the government need not suffer actual damages in order to prove a violation of the False Claims Act, and (2) Pogue's allegations that the claims were submitted in knowing violation of federal anti-kickback and self-referral statutes are sufficient to render the claims false or fraudulent within the meaning of the False Claims Act. Defendants AHC and DTCA responded, asserting that Pogue has no cause of action under the False Claims Act where there is no possibility of damage to the government and a violation of federal anti-kickback and self-referral laws does not render Defendant West Paces' claims "false or fraudulent" as those terms are used in the False Claims Act.

■ The test set out in *Young–Montenay* clearly states that actual damages must be alleged in order to pursue a cause of action under the False Claims Act. Pogue argues, however, that this test is contrary to Supreme Court precedent. In *Rex Trailer Co. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956), the Supreme Court held that "there is no requirement, statutory or judicial, that specific damages be shown" to support a claim under the Surplus Property Act. *Id.* at 152, 76 S.Ct. at 222. In arriving at this conclusion the Court relied upon its earlier opinion in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), which did not explicitly address the issue of the necessity of proving actual damages under the False

Claims Act but did affirm the judgment of the district court which had found that failure to show actual damage did not preclude recovery under the False Claims Act.[1] *See also United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1525 (9th Cir.1995) (stating that the "lack of a determination of harm ... does not preclude a claim under the [False Claims Act]"); *United States v. Ridglea State Bank*, 357 F.2d 495, 497 (5th Cir.1966); *Toepleman v. United States*, 263 F.2d 697, 699 (4th Cir.1959), *cert. denied sub nom. Cato v. United States*, 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959) (noting that the investigation necessary to detect a false or fraudulent claim costs the government money even if no money is paid on the claim); *United States v. Rohleder*, 157 F.2d 126, 129 (3rd Cir.1946); *United States v. Kensington Hosp.*, 760 F.Supp. 1120, 1127 (E.D.Pa.1991) (listing cases). *But see Young–Montenay*, 15 F.3d at 1043; *United States ex rel. Stinson v. Provident Life & Accident Ins. Co.*, 721 F.Supp. 1247, 1258–59 (S.D.Fla.1989) (stating that the False Claims Act requires that the government suffer damages as a result of the submission of a false or fraudulent claim); *Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 827 (S.D.N.Y.1986), *aff'd*, 817 F.2d 1007 (2nd Cir. 1987). While there is clearly some disagreement among the courts regarding this issue, this Court cannot ignore the decision of the Supreme Court in *Rex Trailer*. Although *Rex Trailer* involved the Surplus Property Act rather than the False Claims Act, the Court plainly stated that it had earlier recognized in *Marcus*, a case involving the False Claims Act, that there was no requirement that specific damages be shown. Accordingly, this Court finds that Pogue need not allege facts concerning actual damages in order to recover under the False Claims Act.

■ Pogue next asserts that although the claims were not false in the sense that Defendants sought compensation for services that were not rendered or were unnecessary, they were nonetheless fraudulent because by submitting the claims, Defendants implicitly stated that they had complied with all statutes, rules, and regulations governing the Medicare Act, including federal anti-kickback and self-referral statutes. Pogue contends that participation in any federal program involves an implied certification that the participant will abide by and adhere to all statutes, rules, and regulations governing that program. He thus argues that by submitting a claim for payment without complying with such statutes, rules, and regulations, Defendants have submitted a fraudulent claim in violation of the False Claims Act.

A recent trend of cases appear to support Pogue's proposition that a violation of Medicare anti-kickback and self-referral laws also constitutes a violation of the False Claims Act. In *United States ex rel. Roy v. Anthony*, No. C–1–93–0559, 1994 WL 376271 (S.D.Ohio July 14, 1994), the United States District Court for the Southern District of Ohio confronted this issue. In *Roy*, the plaintiff alleged that the defendants had violated the False Claims Act by submitting claims to Medicare for services rendered to patients that were the result of referrals for which the defendants received and paid kickbacks. The court specifically noted that the plaintiff had not alleged that the services were not necessary or were not performed. Rather, the plaintiff merely argued that a violation of the anti-kickback and self-referral provisions was sufficient to state a claim under the False Claims Act. The court agreed with the plaintiff and denied the defendants' motion to dismiss. Unfortunately, the court gave little explanation for its decision. It merely stated that the plaintiff's vague assertion created a "tenuous connection between the Fraud & Abuse Statute and the False Claims Act, but the connection is sufficient to overcome the burden of a 12(b)(6) motion." *Id.* at *2. The court then stated that the plaintiff could produce evi-

---

1. In *Marcus*, the government discovered the fraud in time to withhold payments for many of the projects performed by the defendant. The defendants contended that because no actual damage could be shown in these instances, there could be no recovery. The district court held that failure to show actual damages would not prove fatal to the plaintiff's cause of action under the False Claims Act. *United States ex rel. Marcus v. Hess*, 41 F.Supp. 197, 218 (W.D.Pa.1941). The Supreme Court, without discussion of this issue, then affirmed the judgment of the district court. *Marcus*, 317 U.S. at 552–53, 63 S.Ct. at 388–89.

dence that the kickbacks allegedly paid to the defendant physicians "somehow tainted" the claims for Medicare, and thus rendered those claims "constructively false or fraudulent." *Id.* The court did not, however, expound upon what evidence, if any, the plaintiff could present to show that the Medicare claims themselves were "tainted," rendering them false or fraudulent.

Additional support for this trend in using violations of federal anti-kickback and self-referral laws as a basis for a claim under the False Claims Act may be found in the courts' recognition of False Claims Act violations that are based upon violations of other statutes, rules, and regulations. For example, in *Ab–Tech Constr., Inc. v. United States*, 31 Fed.Cl. 429 (1994), *aff'd*, 57 F.3d 1084 (Fed. Cir.1995), the Government brought a counterclaim under the False Claims Act against a company that had been awarded a government contract for construction of a building pursuant to the Small Business Administration's ("SBA") program for minority-owned businesses. The purpose of the SBA program was to assist minority-owned businesses in gaining the skill and experience necessary to be competitive in the marketplace. *Id.* at 432. Toward that goal, the SBA required approval of any management agreement, joint venture, or other agreement relevant to the performance of a subcontract formed under the SBA program. 13 C.F.R. § 124.209(a)(16) (1993). The Government alleged that the plaintiff had entered into a financial arrangement with a non-minority-owned enterprise without getting SBA approval, and thereby submitted false claims in the form of payment vouchers for services performed. The United States Court of Federal Claims agreed.

The court found that "[t]he payment vouchers represented an implied certification by [the plaintiff] of its continuing adherence to the requirements for participation in the [SBA] program." *Ab–Tech*, 31 Fed.Cl. at 434. Noting that the False Claims Act reaches beyond monetary claims that fraudulently overstate the amount due, the court reiterated that the False Claims Act extends "to all fraudulent attempts to cause the Government to pay out sums of money." *Id.* at 433 (quoting *United States v. Neifert–White Co.*, 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968)).

> By deliberately withholding from SBA knowledge of the prohibited contract arrangement with [the non-minority-owned enterprise], [the plaintiff] not only dishonored the terms of its agreement with that agency but, more importantly, caused the Government to pay out funds in the mistaken belief that it was furthering the aims of the [SBA] program. In short, the Government was duped by [the plaintiff's] active concealment of a fact vital to the integrity of that program. The withholding of such information—information critical to the decision to pay—is the essence of a false claim.

*Ab–Tech*, 31 Fed.Cl. at 434.

Pogue argues that the *Ab–Tech* decision governs the present case. The payment vouchers at issue in *Ab–Tech* were not in and of themselves false in that the work was indeed performed and the government was properly charged. Rather, the court found that the plaintiff's assertion that he had complied with the regulations governing the SBA program, when in fact it had not, rendered the payment vouchers false. Likewise, in the present case, Pogue argues that although there is no allegation that Defendants overcharged Medicare or charged it for services not rendered, Defendants' failure to comply with Medicare laws prohibiting kickbacks and self-referrals rendered the Medicare claims submitted by Defendants false or fraudulent.

Similarly, in *United States v. Incorporated Village of Island Park*, 888 F.Supp. 419 (E.D.N.Y.1995), the United States District Court for the Eastern District of New York ruled that the False Claims Act "is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages in a fraudulent course of conduct that causes the government to pay a claim for money." *Id.* at 439 (citing as examples *Scolnick v. United States*, 331 F.2d 598, 599 (1st Cir.1964) (finding that the defendant violated the False Claims Act when he cashed a check mistakenly issued to him for an obli-

gation that had already been satisfied) and *United States v. McLeod,* 721 F.2d 282, 283–84 (9th Cir.1983) (finding the defendant liable for violating the False Claims Act when he presented a check for payment to which he knew he was not entitled)). In *Island Park,* the court found that the defendants had engaged in a pre-selection scheme by which it gave preferential treatment to resident white applicants for housing in violation of the regulations governing the administration of a Community Development Block Grant Program and a Section 235 Housing Program subsidized by the government with Housing and Urban Development ("HUD") funds. 888 F.Supp. at 439–40. Thus, the purchasers of housing were chosen in violation of the conditions upon which HUD approved the program. Further, the court found that the defendants, in obtaining grant funds, falsely stated that persons would not be excluded from the program on the basis of race. *Id.* at 440. Therefore, the court held that the defendants had violated the False Claims Act by engaging in fraudulent conduct and making false statements that caused false claims for HUD-subsidized mortgages to be submitted to the government. *Id.*

In reaching the conclusion that the False Claims Act was intended to include not only situations in which a claimant makes a false statement or submits a false record in order to receive payment but also those situations in which the claimant engaged in fraudulent conduct in order to receive payment, the court in *Island Park* considered the legislative history of the False Claims Act. The legislative history reveals that the False Claims Act was intended to cover "each and every claim submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation...." S.Rep. No. 345, 99th Cong., 2d Sess. 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274. In addition, the legislative history indicates that "claims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program, or though payments on the Government loan are current, if by means of false statements the Government was induced to lend an inflated amount." *Id.* Thus, it is clear that the False Claims Act was intended to cover not only those situations in which the claims themselves are false but also those situations in which a claimant engages in fraudulent conduct with the purpose of inducing payment by the government.

This line of cases indicates that the breadth of the False Claims Act extends well beyond intentional false claims for the payment of money by the federal government. However, in *United States v. McNinch,* 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958), the Supreme Court cautioned that the False Claims Act "was not designed to reach every kind of fraud practiced on the Government." *Id.* at 599, 78 S.Ct. at 953. "The penal nature of the statute requires careful scrutiny to see if the alleged misconduct violates the statute." *United States ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456, 460 (5th Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978) (citing *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 542, 63 S.Ct. 379, 383, 87 L.Ed. 443 (1943)). Accordingly, a number of courts have denied application of the False Claims Act in particular situations, although a claimant has engaged in fraudulent conduct.

In *United States v. Shaw,* 725 F.Supp. 896 (S.D.Miss.1989), the United States District Court for the Southern District of Mississippi addressed the issue of whether a bribe used to influence loan approval rendered the application for the loan false or fraudulent. In *Shaw,* the defendant confessed to giving money to a government official "for the proper discharge of his official duties, ... including ... reviewing and approving loan applications and relevant documents." *Id.* at 897–98. The Government argued that each of the loan applications constituted a false or fraudulent claim because each application carried with it the false implication that they were free of corruption. *Id.* at 900. The court recognized that the bribes may have tainted the loan approval process but, with little explanation, ruled that "[t]he bare fact that bribes were involved in this case ... does not necessarily lead to the further conclusion that false or fraudulent claims were made in

connection with each of the loan applications or preapplications." *Id.*

Similarly, in *United States ex rel. Weinberger v. Equifax,* 557 F.2d 456 (5th Cir. 1977), the United States Court of Appeals for the Fifth Circuit held that even if the plaintiff had properly alleged facts constituting a violation of the Anti–Pinkerton Act, 5 U.S.C. § 3108 (1970), which prohibits the government from employing an individual employed by a detective agency or similar organization, he had failed to state a claim under the False Claims Act. *Equifax,* 557 F.2d at 460. In *Equifax,* the plaintiff alleged that the government had contracted with the defendant to furnish information on prospective employees. *Id.* at 459. In gathering this information, the defendant allegedly employed investigative techniques similar to those used by detective agencies. *Id.* Since such activity would constitute a violation of the Anti–Pinkerton Act, the plaintiff argued that the defendant's submission of a claim for services rendered to the government constitutes a false or fraudulent claim under the False Claims Act because it had implicitly misrepresented its qualification for government employment. The Fifth Circuit disagreed.

In reaching its decision, the court in *Equifax* compared the issue before it with those situations in which claimants had made material misrepresentations to qualify for payment by the government. For example, in *Alperstein v. United States,* 291 F.2d 455 (5th Cir.1961), the Fifth Circuit ruled that a veteran violated the False Claims Act when he falsely swore that he could not afford medical care in order to qualify for federal benefits. *Id.* at 456. Likewise, in *United States v. Johnston,* 138 F.Supp. 525 (W.D.Okla.1956), the United States District Court for the Western District of Oklahoma held that a physician violated the False Claims Act by falsely representing his competency and qualifications in order to gain employment with the Air Force. *Id.* at 527–28. The *Equifax* court distinguished these cases, stating that in order to sustain his claim that Equifax misrepresented its qualifications for government employment, the plaintiff must demonstrate that the government was misled by the defendant's applica-

tion. *Equifax,* 557 F.2d at 461. "Unless the government made it clear that it would not employ detective agencies when it contracted for the work, [the defendant's] application did not make a material misrepresentation, did not mislead the government, and did not defraud the government within the meaning of the False Claims Act." *Id.* Accordingly, the court dismissed the plaintiff's claim under the False Claims Act.

Obviously, the language of the False Claims Act and its legislative history have created a great deal of confusion among the courts regarding the Act's applicability to claims that are not themselves false but were derived through fraudulent conduct. The Supreme Court may have only added to this confusion with its somewhat conflicting holdings in *Neifert–White,* 390 U.S. at 233, 88 S.Ct. at 962, that the False Claims Act extends "to all fraudulent attempts to cause the Government to pay out sums of money," and *McNinch,* 356 U.S. at 599, 78 S.Ct. at 953, that the False Claims Act "was not designed to reach every kind of fraud practiced on the Government."

The legislative history of the False Claims Act reveals that it was designed to protect the Federal treasury. S.Rep. No. 345, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5269. It was enacted in 1863 in response to fraud committed by defense contractors against the Union Army during the Civil War. *Id.* The first substantial amendment of the Act did not come until 1986, when the statute was amended "to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." *Id.* at 1. Thus, the primary purpose of the amended False Claims Act is to encourage reports of fraud by private citizens in order to protect government funds.

In the present case, Pogue has not alleged that the government suffered any loss due to Defendants' alleged illegal activities. He has not asserted that the alleged kickbacks or self-referral profits were improperly included in the claims submitted by Defendants to the government, nor any other facts that would suggest that the claims were somehow tainted. Apparently, the government would have

paid these health care charges regardless of who performed the services and regardless of the reason the patients chose the provider. There is no contention that government funds were lost or put at risk by Defendants' activities.

Nonetheless, the courts in *Ab–Tech* and *Island Park* found that the defendants had violated the False Claims Act despite a lack of risk to government funds. In *Ab–Tech*, the court noted that the government had suffered no loss because it still received a building built to its specifications. 31 Fed. Cl. at 434. In *Island Park*, the government would have paid the same amount for subsidized housing regardless of who eventually occupied those homes. Additionally, as noted earlier in this Memorandum, actual loss is not a necessary element of establishing a claim under the False Claims Act. *See Rex Trailer Co. v. United States*, 350 U.S. 148, 152, 76 S.Ct. 219, 221, 100 L.Ed. 149 (1956) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943)); *United States v. Kensington Hosp.*, 760 F.Supp. 1120, 1127 (E.D.Pa.1991). Therefore, the False Claims Act clearly prohibits fraudulent acts even if they do not cause a loss to the government.

The Court concludes that the False Claims Act was intended to govern not only fraudulent acts that create a loss to the government but also those fraudulent acts that cause the government to pay out sums of money to claimants it did not intend to benefit. The Act's legislative history supports this holding. It states that "each and every claim submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim." S.Rep. No. 345, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274.

As the Supreme Court cautioned in *McNinch*, however, the False Claims Act was not designed to punish every type of fraud committed upon the government. 356 U.S. at 599, 78 S.Ct. at 952. It was not intended to operate as a stalking horse for enforcement of every statute, rule, or regulation. Therefore, Pogue may bring his claim under the False Claims Act only if he can show that Defendants engaged in the fraudulent conduct with the purpose of inducing payment from the government. If Defendants' fraudulent conduct was not committed with the purpose of inducing payment from the government, that conduct does not operate to taint their Medicare claims and render the claims false or fraudulent under the False Claims Act.

In the present case, Pogue has alleged that the government would not have paid the claims submitted by Defendants if it had been aware of the alleged kickback and self-referral violations. Thus, Pogue suggests that Defendants concealed their illegal activities from the government in an effort to defraud the government into paying Medicare claims it would not have otherwise paid. Therefore, the Court finds that Pogue has alleged facts upon which a claim under the False Claims Act may be based. Accordingly, Plaintiff's Motion to Reconsider is hereby GRANTED, and this Court's Memorandum and Order entered September 14, 1995, which granted Defendants' Motion to Dismiss, is hereby VACATED.