924 F.2d 56
 Geraldine L. SCOTT, Individually and on behalf of all other
persons similarly situated, Plaintiff-Appellant,
v.
Donald E. WILLIAMS, as Commissioner of the Commonwealth of
Virginia Department of Motor Vehicles, Defendant-Appellee.
 No. 89-1776.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1990.
Decided Jan. 22, 1991.
 
 David Dennis Beidler, The Legal Aid Soc. of Roanoke Valley, argued, Roanoke, Va. (Henry L. Woodward, The Legal Aid Soc., of Roanoke Valley, Roanoke, Va., on the brief), for plaintiff-appellant.
 Eric Karl Gould Fiske, Asst. Atty. Gen., argued, Richmond, Va. (Mary Sue Terry, Atty. Gen., K. Marshall Cook, Deputy Atty. Gen., Richmond, Va., on the brief), for defendant-appellee.
 Before WIDENER, Circuit Judge, YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation, and McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.
 WIDENER, Circuit Judge:
 
 
 1
 Geraldine L. Scott appeals from an order of the district court denying her motion for class certification and granting summary judgment in favor of the Commissioner of the Virginia Department of Motor Vehicles (DMV). Mrs. Scott brought this action pursuant to 42 U.S.C. Sec. 1983, claiming that the Commissioner's suspension of her driver's license violated the due process clause of the fourteenth amendment to the Constitution. We affirm.
 
 
 2
 The material facts are not in dispute. On June 14, 1988, Geraldine Scott voluntarily admitted herself to Richmond Metropolitan Hospital, where she sought treatment for drug abuse. On June 16, 1988, Mrs. Scott was transferred involuntarily and committed to Central State Hospital, a facility operated by the Virginia Department of Mental Health, Mental Retardation and Substance Abuse Services. Upon her release from Central State on September 27, 1988, she resided at Bethany Hall in Roanoke, Virginia, a recovery home for women with alcohol or drug-related problems. Mrs. Scott remained at Bethany Hall until the spring of 1989, when she returned to her home in Richmond.
 
 
 3
 Pursuant to Va.Code Ann. Sec. 46.1-429,[1] the Acting Medical Director of Central State forwarded a report dated October 24, 1988 to DMV, indicating that Mrs. Scott was not competent to operate a motor vehicle safely because of her drug addiction.[2] On November 28, 1988, the Commissioner issued an order pursuant to Va.Code Ann. Sec. 46.1-427,[3] which notified Mrs. Scott that, based on the report from Central State, her driving privileges would be suspended effective December 3, 1988. The Commissioner's order also set forth the procedures for reinstatement of Mrs. Scott's license.
 
 
 4
 On February 21, 1989, Mrs. Scott filed suit on behalf of herself and all persons similarly situated, seeking declaratory and injunctive relief under 42 U.S.C. Sec. 1983. Specifically, she alleged that she was denied due process of law because the notice of and reasons for the suspension of her license were insufficient, and because she was afforded no predeprivation or meaningful postdeprivation hearing in which to challenge the Commissioner's action. Therefore, she asked the district court to declare section 46.1-427 unconstitutional and enjoin its enforcement. After the parties filed a stipulated statement of facts, the district court considered cross-motions for summary judgment and, on July 24, 1989, denied Mrs. Scott's motions for class certification and summary judgment and granted summary judgment to the Commissioner. Mrs. Scott now appeals.
 
 
 5
 Before addressing the merits of the appeal, we must resolve the Commissioner's claim that this appeal is moot because DMV apparently reinstated Mrs. Scott's license on July 7, 1989, after she complied with the Commissioner's procedures for reinstatement. The Commissioner argues that, because Mrs. Scott is no longer subjected to the condition which gave rise to her claim, see Inmates v. Owens, 561 F.2d 560, 562 (4th Cir.1977), her appeal is moot. As her driving record indicates, however, Mrs. Scott's new license is a restricted license which requires her to submit periodic medical assessments of her competency to drive. Because she previously had an unrestricted license, we believe her personal interest in the litigation continues, see United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980), and we turn to the merits of the appeal.
 
 
 6
 As the district court recognized, a driver's license is a property interest protected by the fourteenth amendment and, once issued, a driver's license may not be taken away without affording a licensee procedural due process. Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). The Commissioner argues that, although Virginia law does not provide for a hearing on the merits of a suspension under section 46.1-427, the procedures established for the reinstatement of licenses suspended pursuant to section 46.1-427 are an effective substitute. As set forth in the Commissioner's order of suspension, to secure reinstatement a licensee in Mrs. Scott's position need only1. Submit a statement from the Director of the Institution, or have your present physician complete the enclosed form, and return it to DMV, indicating that it is safe for you to operate a motor vehicles [sic], and
 
 
 7
 2. Pay a $30 reinstatement fee (if you wish to pay by mail, forward your payment to the above address or if you prefer, it may be taken to your local DMV) and
 
 
 8
 3. Undergo the complete driver's examination (vision, written, and road).
 
 
 9
 Mrs. Scott contends that the procedures for reinstatement are inadequate to satisfy due process and that the Commissioner must provide, before the suspension, a hearing on the merits of his decision to suspend, or at least promptly after the suspension. The question we must answer, therefore, "is what process is due...." Mackey v. Montrym, 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979).
 
 
 10
 As the Court stated in Mackey, answering this question requires an application of the three-prong test enunciated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):
 
 
 11
 "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
 
 
 12
 Mackey, 443 U.S. at 10, 99 S.Ct. at 2617 (quoting Mathews ). With respect to the first prong of the above analysis, we note that here, as in Mackey, the private interest "is a substantial one, for the Commonwealth will not be able to make a driver whole for any personal inconvenience and economic hardship suffered by reason of any delay in redressing an erroneous suspension through postsuspension review procedures." Mackey, 443 U.S. at 11, 99 S.Ct. at 2617. The Court in Mackey also recognized, however, that "[t]he duration of any potentially wrongful deprivation ... is an important factor in assessing the impact of official action on the private interest involved." Mackey, 443 U.S. at 12, 99 S.Ct. at 2618. As the district court noted, the duration of a potentially wrongful deprivation here is very short because a licensee may obtain a remedy immediately. That is, upon receiving a notice of suspension, to obtain reinstatement a licensee need only submit a statement from the doctor of his choice, pay the $30 fee, and retake the driver's examination. Thus, although the private interest is substantial, the impact of official action on that interest is slight.
 
 
 13
 We also agree with the district court that the risk of an erroneous deprivation is negligible because the medical director of the institution is in the best position to assess a patient's ability to operate a motor vehicle safely. In Mackey the Supreme Court noted that "when prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." Mackey, 443 U.S. at 13, 99 S.Ct. at 2618. The Court then considered a Massachusetts statute that mandated the suspension of the driver's license of any driver who was arrested for driving under the influence of intoxicating liquor and refused to take a breath-analysis test. As is the case here, the Massachusetts statute left the Registrar of Motor Vehicles no discretion; once a police officer submitted a report relating the Massachusetts driver's refusal to take the test, the Registrar had no option other than immediate suspension.
 
 
 14
 In evaluating the risk of an erroneous decision, the Court noted that a police officer "is, by reason of his training and experience, well suited for the role the statute accords him in the presuspension process," and that "the risk of erroneous observation or deliberate misrepresentation of the facts by the reporting officer in the ordinary case seems insubstantial." Mackey, 443 U.S. at 14, 99 S.Ct. at 2619. For the same reasons, the medical director of the institution is well suited for the role section 46.1-429 accords to him, and Mrs. Scott has failed to identify anyone else who would be in a better position to determine whether her drug addiction affected her ability to drive safely.
 
 
 15
 Indeed, the only plausible alternative would be another physician, an option provided for in the procedures for reinstatement and an option that Mrs. Scott ultimately utilized.[4] Moreover, the immediate remedy afforded here is superior to the immediate postdeprivation review provided in Mackey. The Commissioner in Virginia does not question the accuracy of a physician's report submitted for the purpose of reinstatement, but views it as a valid and conclusive statement of the licensee's competency. Thus, far from merely allowing a licensee the opportunity to present medical evidence at a hearing to contest the medical director's report, the reinstatement procedures cloak the licensee's evidence with an irrebuttable presumption of correctness. The risk of an erroneous deprivation that a licensee could not immediately counter by seeking reinstatement is therefore insignificant, and any additional or alternative procedural safeguards would be inferior to the Commissioner's procedures for reinstatement.[5]
 
 
 16
 Finally, with respect to the third prong of Mathews, the Commonwealth's interest in ensuring the safety of its citizens is dominant. Mrs. Scott relies largely on Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the only case in which the Supreme Court has determined that an evidentiary hearing was necessary before the suspension of a driver's license. The Georgia statute at issue in Bell, however, was enacted not to promote safety, but to ensure the satisfaction of judgments arising out of automobile accidents. Indeed, the Court was quick to recognize this significant distinction in subsequent cases:
 
 
 17
 [T]he paramount interest the Commonwealth has in preserving the safety of its public highways, standing alone, fully distinguishes this case from Bell v. Burson, ... on which [the licensee] and the District Court place principal reliance. We have traditionally accorded to the states great leeway in adopting summary procedures to protect public health and safety.
 
 
 18
 Mackey, 443 U.S. at 17, 99 S.Ct. at 2620 (citation omitted); see also Dixon v. Love, 431 U.S. 105, 114-15, 97 S.Ct. 1723, 1728-29, 52 L.Ed.2d 172 (1977) (distinguishing Bell and determining that presuspension hearing was unnecessary).
 
 
 19
 We find, as did the Court in Mackey, that by "promptly removing such drivers from the road, the summary sanction of the statute contributes to the safety of public highways." Mackey, 443 U.S. at 18, 99 S.Ct. at 2621. Presuspension procedures would impede the Commonwealth's interest in removing unsafe drivers as quickly as possible, and would impose a substantial administrative and monetary burden on the Commonwealth. Therefore, the Commonwealth's summary suspension procedure does not violate due process if a prompt postsuspension remedy is available. Mackey, 443 U.S. at 15, 19, 99 S.Ct. at 2619, 2621. The Commissioner's reinstatement procedures are simple, weighted in the licensee's favor, less costly to both the licensee and the Commonwealth than a hearing, and may be initiated immediately, even before a license suspension becomes effective. We find that the reinstatement procedures are constitutionally adequate.[6]
 
 
 20
 The judgment of the district court is accordingly
 
 AFFIRMED.[7]
 
 
 [1]
 Effective October 1, 1989, Title 46.1 of the Virginia Code was recodified in Title 46.2. Because the recodification did not materially affect the substance of the sections involved in this appeal, and for the sake of consistency, our references in the text are to the former sections of Title 46.1. Section 46.1-429, now codified as section 46.2-401, provides:
 Whenever practicable, at least ten days prior to the time when any patient is to be discharged from any institution operated or licensed by the Department of Mental Health, Mental Retardation and Substance Abuse Services, if the mental condition of the patient is, because of mental illness, mental retardation, inebriety, or drug addiction, in the judgment of the director or chief medical officer of the institution such as to prevent him from being competent to drive a motor vehicle with safety to persons and property, the director or chief medical officer shall forthwith report to the Commissioner, in sufficient detail for accurate identification, the date of discharge of the patient, together with a statement concerning his ability to drive a motor vehicle.
 
 
 [2]
 We note that the authorities at Central State did not forward the report to DMV ten days before releasing Mrs. Scott, as section 46.1-429 requires "whenever practicable," but instead notified DMV approximately one month after her discharge. The record before us does not disclose the reasons for the timing of the report. Although unnecessary delay is at odds with the purpose of the statute, this technical violation, if it is a violation at all, does not affect the merits of Mrs. Scott's appeal and does not change our analysis
 
 
 [3]
 Section 46.1-427, now codified at section 46.2-400, provides in pertinent part:
 The Commissioner, on receipt of notice ... that a person discharged from an institution operated or licensed by the Department of Mental Health, Mental Retardation and Substance Abuse Services is, in the opinion of the authorities of the institution, not competent because of mental illness, mental retardation, inebriety, or drug addiction to drive a motor vehicle with safety to persons or property, shall forthwith suspend his license....
 
 
 [4]
 In fulfilling the requirements for reinstatement of her license, Mrs. Scott obtained an affidavit dated April 4, 1989 from Dr. Thomas Sarvay in which he indicated that, in his professional opinion, Mrs. Scott could exercise reasonable and ordinary control over a motor vehicle. Dr. Sarvay also recommended that Mrs. Scott's condition be reevaluated every three to six months
 
 
 [5]
 As the Supreme Court stated in Mackey, "Nor is it any answer to the Commonwealth's interest in public safety that its interest could be served as well in other ways." Mackey, 443 U.S. at 18, 99 S.Ct. at 2621
 
 
 [6]
 We also reject Mrs. Scott's claim that the notice and reasons for the suspension of her license were inadequate. The Commissioner's order stated that Mrs. Scott's license would be suspended five days from the date of the order because her release from Central State indicated that she was unable to operate a motor vehicle safely. Because she knew she was at Central State because of her drug addiction, the order adequately informed Mrs. Scott of the reason for the suspension and also set forth the procedures for reinstatement
 
 
 [7]
 We also affirm the denial of class certification