UNITED STATES of America
ex rel. Mike JOSLIN

v.

COMMUNITY HOME HEALTH OF
MARYLAND, INC., et al.

No. Y–96–2467.

United States District Court,
D. Maryland.

Nov. 17, 1997.

Lynne A. Battaglia, United States Attorney, Baltimore, Maryland; Charles J. Peters, Assistant United States Attorney, Baltimore, Maryland, for the Government.

J. Stephen Simms, Baltimore, Maryland; Robin Page West, Baltimore, Maryland, for Relator.

Marta D. Harting, Baltimore, Maryland; E. Leslie Hoffman, Washington, DC; Barbara Rowland, Washington, DC, for Defendants.

*MEMORANDUM OPINION*

JOSEPH H. YOUNG, Senior District Judge.

### I.

Relator Mike Joslin has brought this case under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging that Defendants violated the Act by submitting Medicare claims to which they were not entitled because of their alleged noncompliance with certain state licensing requirements for home health care facilities. The Government has declined to intervene. The Court previously denied various motions to dismiss and for summary judgment. Subsequent to the Court's denial of the parties' summary judgment motions, the parties entered into a stipulation of fact and filed cross-motions for summary judgment, maintaining that the stipulation of fact permits the Court to resolve the case.

The stipulation and record before the Court establish the following undisputed facts. Defendant Community Home Health of Maryland, Inc. ("CHH") provides home health care services to patients in ten Maryland counties, and participates in the federal Medicare program. Federal law requires home health care providers like CHH to be in "compliance with all applicable Federal, State and local laws and regulations" as a condition of participation in the Medicare program. 42 U.S.C.A. § 1395bbb(a)(5) (West 1992 & Supp.1997); 42 C.F.R. § 484.12(a) (1996). CHH is the product of an acquisition in which Defendant Medical Services of America, Inc. ("MSA") acquired Family Care Home & Health Care Services, Inc. ("Family Care"). Family Care was incorporated on August 22, 1986, and its charter required a majority of its directors to be employees, officers or directors of a specific health maintenance organization ("HMO"). Family Care received the necessary Maryland operating license on October 22, 1986. On July 1, 1993, M.S.A. acquired the stock of Family Care. Prior to this acquisition, Family Care amended its charter to require that a majority of its Board of Directors be employees, officers or directors of one or more HMOs. The Maryland Licensing Office agreed with M.S.A. that the transfer of Family Care's stock to M.S.A. did not result in a change of ownership because the Family Care corporation continued to exist. On September 17, 1993, M.S.A. changed Family Care's name to the current CHH name. CHH has been providing home health services since that time.

These events occurred against the changing backdrop of Maryland's health care licensure laws. Maryland requires health care

organizations to obtain a "certificate of need" ("CON") prior to providing most health care services. *See* MD. CODE ANN., HEALTH-GEN. II §§ 19–115 & 19–116 (1996 & Supp.1997). At the time of Family Care's incorporation, however, HMOs or health care facilities controlled directly or indirectly by a HMO were exempt from the CON requirement unless otherwise required by federal law. MD. CODE ANN., HEALTH-GEN. II § 19–116(b) (Supp.1982). The Maryland legislature granted this exemption in response to the Federal Health Planning and Resources Development Amendments of 1979, Pub.L. No. 96–79, 93 Stat. 592, 614 *et seq.* (1979), which imposed restrictions on the states' ability to require a CON for HMOs. In 1986, Congress repealed these amendments effective January 1, 1987. Pub.L. No. 99–660, 100 Stat. 3743, 3799 (1986). The Maryland General Assembly responded by amending § 19–116(b) to eliminate the HMO exemption to Maryland's CON requirement. 1987 Md. Laws 2112. As amended, § 19–116(b) required HMOs or health care facilities controlled directly or indirectly by an HMO to obtain a CON before building, developing, operating, purchasing, or participating in building, developing, operating, or establishing a facility required under § 19–115 to have a CON. MD. CODE ANN., HEALTH-GEN. II § 19–116(b) (1987).

Thus, Family Care was not required to obtain a CON at the time of its incorporation in 1986, and it received a valid Maryland license without first obtaining a CON. At the time of MSA's acquisition of Family Care, however, this CON exemption had been repealed, and the relevant requirements of §§ 19–115 and –116, as amended in 1987, have remained largely unchanged. Specifically, Maryland law currently requires HMOs or HMO-controlled health care facilities to obtain a CON before developing, operating, or participating in: (1) the building, development, or establishment of a new health care facility; (2) the relocation of a health care facility to a new site; (3) changing the bed capacity of a health care facility

in certain circumstances; (4) changing the type or scope of certain health care services; and (5) making certain capital expenditures. MD. CODE ANN., HEALTH-GEN. II §§ 19–115 & 19–116(b)(ii) (1996 & Supp. 1997).[1]

Relator contends Defendants have violated the False Claims Act ("FCA") by certifying their compliance with Maryland law under § 1395bbb(a)(5), yet submitting Medicare claims to the Government while not in compliance with Maryland's CON requirements. Relator maintains that, though Maryland law did not require Family Care to obtain a CON before commencing operation in 1986 because it received its license under the now-repealed HMO exemption to the CON requirement, Defendants nonetheless violated Maryland's CON requirement by not obtaining a CON in connection with MSA's 1993 acquisition of Family Care and subsequent participation in the Medicare program. Relator notes that federal law required Defendants to certify their compliance with relevant state laws and regulations as a prerequisite to participation in the Medicare program. Accordingly, Relator argues, Defendants' certifications of compliance to the Government constitute actionable fraud under the FCA because: (1) Defendants failed to obtain a CON, and failed to report their lack of a CON to the Government, after the 1993 acquisition; (2) Defendants "ranged far beyond the scope of" the CON exemption by changing CHH's Board of Directors to no longer be comprised of HMO employees, officers, and directors; and (3) Defendants provided services to non-HMO enrollees. In short, Relator contends the above facts demonstrate the Defendants' failure to comply with relevant state law, rendering their demands for payment under the Medicare program fraudulent.

Defendants contend they are entitled to summary judgment. First, Defendants argue that they have not violated Maryland's CON requirement because CHH was not required to obtain a CON when it eliminated

---

1. The current provisions of these Code sections are largely the same as the version in effect at the time of MSA's acquisition of Family Care. *See* MD. CODE ANN., HEALTH-GEN. II §§ 19–115 & 19– 116 (1990 & Supp.1993). Although the Court refers to the current Code volume, unless otherwise noted the current provisions are identical to those in effect in 1993.

HMO control, and because MSA's acquisition of Family Care did not trigger the CON requirements. Defendants also maintain that even if their conduct violated the CON requirements, no false statements or certifications were made regarding compliance with Maryland law. Specifically, Defendants believe a violation of the law does not, standing alone, always trigger the false claims statute, and that the Act requires scienter before liability attaches.

## II.

Before considering the merits of the parties' arguments, a brief review of the relevant legal standards for summary judgment is useful to help frame the issues. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Regarding materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the litigation under governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Regarding genuineness, a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). This burden does not require the moving party to produce evidence showing the absence of a genuine issue of material fact, but only to point out the absence of a material fact. *Id.* In response, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P.

56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir.1995). The non-movant's failure to do so requires summary judgment be granted. *Strag v. Board of Trustees*, 55 F.3d 943, 951 (4th Cir.1995). The mere existence of a scintilla of evidence in support of Plaintiff's case will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of Plaintiff, however, is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. at 2513–14 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

## III.

The parties agree that CHH's predecessor, Family Care, was not required to obtain a CON when it first incorporated in 1986 because of the HMO exemption to the CON requirement then extant under Maryland law. Defendants advance several reasons why they did not violate Maryland's CON requirement. First, Defendants argue that they did not have to comply with a repealed statute. Second, Defendants assert M.S.A. was not required to obtain a CON when it acquired Family Care. Finally, Defendants contend CHH did not violate the CON requirement when it eliminated HMO control of its operation because its right to provide home health services had vested.

### A.

As discussed above, in 1987 the Maryland General Assembly repealed the CON exemption for HMOs or health care facilities controlled directly or indirectly by a HMO. Relator contends that, despite the repeal, CHH, as Family Care's successor corporation, was required to abide by the terms of the exemption under which it received permission to operate. Defendants, in turn, argue that the repeal of the HMO exemption "wipes it out as if it had never existed", thereby extinguishing its obligation to comply with the statute, to maintain an HMO-controlled board, or to treat only HMO enrollees.

When the Maryland General Assembly repeals a statute, "[t]he effect . . . is to obliterate it completely as if it had never passed. . . . ." *Wilson v. Simon,* 91 Md. 1, 45 A. 1022 (1900) (quoting *Dashiell v. Mayor & City Council of Baltimore,* 45 Md. 615 (1877)). Maryland also follows the well-established rule of statutory interpretation that repeal of a statute does not destroy contract or property rights created by the statute which vest before passage of the repealer. *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 256, 137 A.2d 680 (1958); *Dal Maso v. Board of County Comm'rs,* 182 Md. 200, 206, 34 A.2d 464 (1943); *State ex rel. County Comm'rs of Prince George's County v. American Bonding Co.,* 128 Md. 268, 273, 97 A. 529 (1916). To become vested, the right at issue must be a contract or property right, "or a right arising from a transaction in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute." 1A SUTHERLAND, STAT. CONSTR. § 23.34, at 428–29 (5th ed.1993).

Although the case law does not discuss the issue of whether a license to provide health care services is "property" within the context of this rule of statutory interpretation, in the analogous area of due process, courts have uniformly held that the holder of a license has a property right protected by the appropriate Federal Due Process Clause. *Scott v. Williams,* 924 F.2d 56, 58 (4th Cir.1991) (stating driver's license is property interest protected by Fourteenth Amendment) (citing *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971)); *Mishler v. Nevada State Bd. of Med. Examiners,* 896 F.2d 408, 409–10 (9th Cir.1990) (stating professional license is protected property right) (citing *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957)); *Commission on Med. Discipline v. Stillman,* 291 Md. 390, 405, 435 A.2d. 747 (1981) (right to practice medicine protected property right subject to paramount police power of state); *cf. Love v. Pepersack,* 47 F.3d 120, 122–23 (4th Cir.) (stating that laws calling for issuance of license do not create property right unless state has no discretion to grant or deny the license), *cert. denied,* 516 U.S. 813, 116 S.Ct.

64, 133 L.Ed.2d 27 (1995). This principle of constitutional law is equally applicable in the context of statutory interpretation.

When Family Care's license to operate home health services was issued in accordance with the now-repealed HMO CON exemption, Family Care acquired a vested property right in that license protected by the Fourteenth Amendment. Accordingly, its right to provide health services was not affected by the repeal unless the General Assembly clearly and unambiguously intended to apply the repealer retroactively. *Beechwood,* 215 Md. at 253–54, 137 A.2d 680 ("in the absence of a clear manifestation of contrary intent, a statute which adversely affects substantive rights will be assumed to operate prospectively rather than retrospectively"). The repealer evinces no such intention. *See* 1987 Md. Laws 2112. Under this analysis, CHH, as the successor to Family Care, holds a valid license to provide health services under Maryland law. Although the CON exemption permitting Family Care to hold a license as an HMO-controlled organization was repealed, the repeal did not affect Defendants' vested property right in Family Care's license. CHH is, therefore, in compliance with Maryland's licensing requirements, and any representation to the Federal Government regarding its compliance with Maryland licensing law is correct in this respect, and did not violate the FCA.

Relator, however, also contends that Defendants' alleged certifications of compliance to the Government violate the FCA because Defendants eliminated HMO control of CHH after repeal of the statute by changing the composition of CHH's Board of Directors. Relator similarly maintains Defendants violated Maryland law by treating non-HMO enrollees. The CON exemption granted Family Care required that both these conditions be met. In essence, Relator argues that for CHH to maintain its valid license issued in accordance with the repealed CON exemption, CHH must continue to comply with the terms of the repealed statute. This argument is without merit. As discussed above, under Maryland law repeal of a statute eliminates it completely and

treats the repealed act as though it never existed. In the absence of either a general saving statute or a saving clause in the repealer, this principle applies equally to inchoate rights (i.e., rights which have not vested) as to inchoate liabilities—that is, liabilities not incurred before the statute's repeal. 1A SUTHERLAND, *supra,* § 23.33, at 424.

Although Maryland has a general saving statute, *see* MD. ANN. CODE art. 1, § 3 (1996), the Maryland Court of Appeals has held that this code section simply continues a repealed statute in force to punish offenses committed *prior to repeal* and to preserve liabilities incurred under the prior law. *State v. Johnson,* 285 Md. 339, 402 A.2d 876 (1979). CHH did not "violate" the repealed CON exemption until 1993, well after its repeal by the Maryland legislature, and as previously mentioned, the repealer contains no saving clause. Accordingly, CHH did not violate Maryland licensing law by changing the composition of its Board of Directors, and any certifications to the Federal Government were not violative of the FCA in this respect.

### B.

Relator also urges that Defendants violated the FCA by falsely certifying compliance with state law, yet failing to acquire a CON in connection with MSA's 1993 acquisition of Family Care. Defendants disagree, arguing that Family Care was already exempt from the CON requirement under the repealed HMO exemption. Specifically, Defendants urge that Family Care did not become a new "facility" and that under Maryland law, the transfer of a corporation's stock does not constitute acquisition of a corporate asset. Defendants also contend that under federal Medicare regulations, transfer of a corporation's stock is not a change in ownership. As mentioned above, however, federal Medicare law requires participants to comply with all relevant state laws and regulations as a condition of program participation. In this case, Maryland law, and not federal regulations, governs Defendants' compliance with Mary-

land's CON requirement. The Court must, therefore, analyze §§ 19–115 and 19–116 of the Health–General Article and the corresponding Maryland Regulations to determine whether Defendants' triggered either section's CON requirement during the 1993 acquisition.

#### 1.

■ Section 19–115(e) of the Health–General Article mandates that "[a] person shall have a [CON] . . . before the person develops, operates, or participates in" certain types of health care projects. MD. CODE ANN., HEALTH-GEN. II § 19–115(e) (1996 & Supp.1997). These projects include the building, development or establishment of a new health care facility; relocation of an existing facility; changing a facility's bed capacity; changing the scope or type of health care services provided; making certain capital expenditures; closing a hospital, and; consolidations and mergers. See, respectively, *id.* §§ 19–115(f), (g), (h), (i), (j), (*l*), & (m). In this case, MSA's acquisition of Family Care did not establish a new facility, but simply transferred ownership of the Family Care corporation's stock. No facts have been presented demonstrating a change in the type or scope of Family Care/CHH's health care services, or in its bed capacity. The M.S.A. acquisition does not appear to constitute a consolidation or merger, and did not result in the closing of a hospital because Family Care/CHH is a home health agency. However, the facts of this case potentially implicate the CON requirements triggered by relocation or certain capital expenditures.

Section 19–115(g)(1) requires a CON to be obtained "before a health care facility is moved to another site."[2] The parties do not dispute that in the Fall of 1994, CHH moved its main health care facility from the Dundalk section of Baltimore City to Owings Mills, in Baltimore County (Pl.'s Supp. Memo. Ex. B). Plaintiff asserts that CHH's "relocation" triggered the CON requirement of § 19–115(g), thereby rendering Defendants' representations of compliance to the

---

**2.** This requirement does not apply if the Maryland Health Resources Planning Commission adopts limits for relocations and the proposed relocation does not exceed those limits. MD

CODE ANN., HEALTH-GEN II § 19–115(g)(2)(i). It does not appear, however, that the Commission has adopted such regulations.

Federal Government false. Defendants, however, assert that because Relator first raised this issue in a supplemental memorandum to his summary judgment motion, well after summary judgment motions and the stipulation of fact were filed, Relator's attempt to raise the issue now is, in effect, an impermissible attempt to amend Relator's Complaint. Defendants also assert that applying the requirements of § 19–115(g) to CHH is nonsensical because a home health agency provides services in patients homes, rather than fixed sites, and thus CHH continued to operate within the geographic areas specified within its license.

■ The Court agrees with Defendants' analysis. Relator has waited until well after the summary judgment deadline to raise this issue. Although the Court has wide discretion to permit amendment of pleadings, *see* FED. R. CIV. P. 15(a); *Deasy v. Hill,* 833 F.2d 38, 40 (4th Cir.1987), a motion to amend may be denied if unduly delayed and the opposing party is unfairly prejudiced. *Deasy,* 833 F.2d at 40; *National Bank of Washington v. Pearson,* 863 F.2d 322, 328 (4th Cir.1988) (stating that undue delay coupled with prejudice or bad faith is sufficient reason to deny motion to amend). Relator has proffered no reason for his delay. Relator's *de facto* attempt at amendment is not based on newly-discovered facts, and these contentions could easily have been raised in the body of the summary judgment motions or responses thereto. Contrary to Relator's contentions, Defendants did not discuss relocation in the body of their summary judgment motion, but merely stated that § 19–115(g) did not apply *to the acquisition of Family Care's stock* (Def. Mot. at 9). Relator's summary conclusions that Defendants violated the CON requirement do not suffice to preserve the issue for consideration at this time. Further, the parties have previously entered into a stipulation of fact; had Relator intended to press this issue, fairness dictates that he raise the issue before finalizing the stipulation agreement, thereby permitting Defendants to consider this issue before agreeing to the stipulation's terms and wording. Relator's failure to raise this issue before the parties agreed upon a stipulation of fact prejudiced the Defendants and justifies refusing this amendment.

■ Holding that CHH's relocation triggered § 19–115(g) would also be contrary to the statute's apparent intent. The starting point for interpreting a Maryland statute is the statutory language. If the language is clear and consistent with the statutory purpose, and does not produce an absurd result, further exploration is unnecessary. *State v. Bricker,* 321 Md. 86, 92, 581 A.2d 9 (1990). If the statute is ambiguous, the "cardinal rule" of Maryland statutory construction is to effectuate the legislature's intent. *Id.* Applying the literal language of § 19–115(g) to this case would lead to an absurd result. Defendants correctly note that home health agencies, unlike stationary health care facilities, provide services in patients' homes. Whether CHH's offices are located in Dundalk or in Owings Mills does not change the scope of its services or the geographic area in which CHH operates. Although the legislative history of § 19–115(g) is, to say the least, sparse, the Maryland Court of Special Appeals has noted the CON requirement serves "to assure an efficient and effective health care system for Maryland...." *Maryland Gen. Hosp. v. Maryland Health Resources Planning Comm'n,* 103 Md.App. 525, 528, 653 A.2d 1029, *cert. denied,* 339 Md. 355, 663 A.2d 72 (1995). To hold that § 19–115(g) required Defendants to obtain a CON on the facts of this case would frustrate this purpose by forcing a home health agency to engage in a bureaucratic kabuki dance for no legitimate reason, given that the geographic scope of CHH's services would remain unchanged.

Surprisingly, no Maryland court has construed § 19–115(g). In the absence of a clearly controlling state decision, a federal court will attempt to determine what the state's highest court would hold if confronted with the same issue. *Sherby v. Weather Bros. Transfer Co.,* 421 F.2d 1243, 1244 (4th Cir.1970). If Maryland law controls, the Court will apply a rule it reasonably believes the Maryland Court of Appeals would follow. *Kirby v. Chrysler Corp.,* 554 F.Supp. 743, 749 (D.Md.1982). In this case, the saturation of the home health care market will not change regardless of where CHH locates its primary

offices because it will continue to provide services to home-bound patients within the geographic area specified in CHH's license. The Court therefore holds that CHH's relocation did not trigger the requirements of § 19–115(g).

2.

Relator also argues that MSA's acquisition of Family Care violated Maryland's CON requirement by failing to comply with § 19–115(j), requiring a CON before certain capital expenditures are made by or on behalf of a health care facility.[3] MD. CODE ANN., HEALTH-GEN. II § 19–115(j)(1) (1996 & Supp. 1997). Section 19–115(j)(4) states that "[a] certificate of need is required before a person acquires a health care facility if a certificate of need would be required under [§ 19–115(j)(1)] for the acquisition by or on behalf of the health care facility." Section 19–115(j)(1), in turn, requires in relevant part that a CON be obtained before an expenditure not properly chargeable as an operating or maintenance expense "is made as part of an acquisition ... and, after adjustment for inflation as provided in the regulations of the [Health Resources Planning] Commission, the total expenditure, including the cost of each study, survey, design, plan, working drawing, specification, and other essential activity, is more than $1,250,000[.]" *Id.* § 19–115(j)(1)(i)(1). In short, these statutes, read together, require a person acquiring a health care facility who pays more than $1,250,000 for the facility to first obtain a CON. This requirement does not apply, however, to "[a]cquisition of a health care facility if, at least thirty days before making the contractual arrangement to acquire [it], written notice of the intent to make the arrangement is filed with the Commission and the Commission does not find, within 30 days after the Commission receives notice, that the health services or bed capacity of the facility will remain unchanged." *Id.* § 19–115(j)(5)(ii).

Defendants argue they were not required to obtain a CON because the transfer of Family Care's stock to M.S.A. did not constitute a transfer of "assets" but merely transferred the corporation's stock, and was therefore not a change in ownership triggering the CON requirements. Although Maryland has never addressed the question directly, it is generally held that when a corporation is acquired by the purchase of all its outstanding stock, the corporation remains intact and retains its liabilities. *See, e.g., Department of Transp. v. PSC Resources, Inc.,* 175 N.J.Super. 447, 419 A.2d 1151, 1154 (1980); *McClory v. Schneider,* 51 S.W.2d 738, 741 (Tex.Ct.Civ. App.1932) (distinguishing between sale of corporation's stock and a sale of its assets); *see also Compania de Astral v. Boston Metals Co.,* 205 Md. 237, 269, 107 A.2d 357 (1954) (stating that transfer of corporate stock may transfer control of corporation and its assets, but does not transfer ownership of the assets). This legal principle indicates that Family Care was not required to obtain a CON upon the transfer of its stock, as it retained its corporate existence after the transfer.

Regarding Defendants' possible violations of §§ 19–115(j)(4) and/or (j)(1)(i)(1), Relator has failed to meet his burden of demonstrating that these sections were violated. Relator simply alleges that Defendants violated the CON requirements in the acquisition of Family Care, but proffers no admissible evidence to support their claims. As stated above, the non-moving party may not rest upon their pleadings in response to a summary judgment motion, but must set forth specific facts demonstrating a genuine issue for trial. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *Sylvia Dev. Corp., supra,* 48 F.3d at 817. The non-moving party must, in fact, proffer evidence upon which the jury could reasonably find in their favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Relator has not offered a whit of evidence to support its position that MSA's acquisition of Family Care violated the CON requirements, and has therefore utterly failed to carry its burden in response to Defendants' motion. For example, Relator has not proffered any evidence establishing the price M.S.A. paid for Family Care's stock. This failure requires the Court to grant summary judgment

---

**3.** A "health care facility" includes a home health care agency such as Family Care/CHH. MD. CODE ANN., HEALTH-GEN II §§ 19–101(f)(1)(v) & 19–401(b) (1996 & Supp.1997).

for the Defendants. *Strag, supra,* 55 F.3d at 951.

### 3.

Section 19–116(b) of the Health–General Article requires HMOs and health care facilities which, directly or indirectly, either control or are controlled by an HMO, to have a CON before operating or purchasing any health care project requiring a CON under § 19–115. MD. CODE ANN., HEALTH-GEN. § 19–116(b)(1)(ii) (1996). At the time of MSA's acquisition of Family Care in 1993, Family Care's Board of Directors consisted of directors, officers, or members of a specific HMO (Stip.¶ 5), § 19–116 may have applied to Family Care at the time of the acquisition. The facts do not indicate whether M.S.A. was controlled directly or indirectly by a HMO, bringing it within this section's purview.

Because the relevant portions of § 19–116 essentially incorporate the provisions of § 19–115 by reference, the same analysis applies, and the Court holds that Family Care did not violate this section, and that Relator has failed to meet his burden of offering admissible evidence establishing a violation of the CON requirement during the 1993 acquisition of Family Care.

### IV.

 The False Claims Act provides in pertinent part:

> **(a) Liability for certain acts.**—Any person who—(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval. is liable to the United States Government. . . .

31 U.S.C.A. § 3729(a)(1) (West Supp.1997). Section 3729(b) defines "knowingly" as having actual knowledge of the information, acting in deliberate ignorance of the truth or falsity of the information, or acting in reckless disregard of the information. *Id.* § 3729(b). No proof of specific intent is required. *Id.* The requisite intent for FCA liability "is the knowing presentation of what is known to be false." *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1156 (2d Cir.1993) (quoting *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416 (9th Cir.1991)). The Fourth Circuit has recently reaffirmed its requirement in civil FCA claims that the false statement be material. *United States ex rel. Berge v. Trustees of the Univ. of Ala.,* 104 F.3d 1453, 1459–60 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997). This question, which is one of law for the Court, requires the Court to determine "whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action." *Id.* at 1460 (quoting *United States v. Norris,* 749 F.2d 1116, 1122 (4th Cir.1984)). Contrary to Defendants' contentions, no actual loss to the Government is required. *United States ex rel. Pogue v. American Healthcorp, Inc.,* 914 F.Supp. 1507, 1508–09 (E.D.Tenn.1996).[4]

 Even if Defendants had violated Maryland's CON requirements, summary judgment is also appropriate for Defendants because Relator has failed to demonstrate that such violations trigger liability under the FCA. As Defendants note, mere non-compliance with a statute or regulation, in the absence of a false certification, is insufficient to constitute a false statement within the meaning of the FCA. *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1267 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 958, 136 L.Ed.2d 844 (1997). Where the Government conditions payment of a claim upon certification of compliance with a statute or regulation, however, a party violates the FCA by falsely certifying compli-

---

4. The court in *Pogue* relies upon the Supreme Court case of *Rex Trailer Co. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956), in which the Court held that no specific loss need be shown under the Surplus Property Act. *Id.* at 152, 76 S.Ct. at 221–22. The *Rex Trailer* Court, in turn, relied on its decision in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), which did not directly address the issue under the FCA but affirmed the decision of the district court in this regard. While a split of authority exists on the issue, *see Pogue,* 914 F.Supp. at 1508–09 (discussing the split), the *Pogue* court's rationale is the better view in light of the FCA's broad purpose. *See id.*

ance with the statute or regulation. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997); *Hopper, supra*, 91 F.3d at 1266.[5] The parties have submitted a copy of Form HCFA–1450 which Defendants used to submit Medicare bills for reimbursement (Def.'s Reply Ex. 5),[6] but the form includes no certification that Defendants were in compliance with state laws. Relator, however, contends that submitting bills to the Government for reimbursement constituted an "implied certification" of compliance.

■ The case most directly addressing the implied certification issue is *Ab–Tech Constr., Inc. v. United States*, 31 Fed.Cl. 429 (1994), *aff'd*, 57 F.3d 1084 (Fed.Cir.1995). In that case, the plaintiff received a government contract to construct a facility for the Army Corps or Engineers under Section 8(a) of the Small Business Act, 15 U.S.C. § 631 *et seq.*, which assists minority-owned businesses. The Government required prior approval of subcontracts, management agreements, and the like, and the plaintiff was required to submit progress payment vouchers periodically. The Court of Federal Claims held that the plaintiff's submission of payment vouchers constituted an implied certification of compliance with the requirements of § 8(a), permitting liability to attach under the FCA. *Id.* at 434. Quite recently, the Fifth Circuit addressed a similar question in *Thompson, supra*. In *Thompson*, a health care provider was alleged to have submitted Medicare claims in violation of the Medicare anti-kickback statute and self-referral statute (the "Stark laws"). The appellate court considered the question of whether the provider's annual reports, which contained certifications of compliance, constituted a "certification" of compliance with these laws, and held that the record was not sufficiently clear to pass on the question. 125 F.3d at 902–03. The court did note, however, that where the Govern-

ment conditions payment of a claim upon certification, the FCA is implicated. *Id.*

The Fourth Circuit has not addressed this precise question, and the case law on the subject in general is rather sparse. The holding of *Ab–Tech*, however, causes the Court some concern. As noted above, 42 U.S.C. § 1395bbb(a)(5) requires home health agencies to comply with all applicable state laws and regulations as a condition of participation in the program. Further, a number of federal courts have held that the FCA's purpose is broad, and that the Act extends to cover "each and every claim submitted under a contract, loan guarantee, or other agreement ... originally obtained by means of false statement or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation...." *United States v. Incorporated Village of Island Park*, 888 F.Supp. 419 (E.D.N.Y.1995) (quoting S.Rep. No. 345, 99th Cong., 2d Sess. 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274); *Pogue*, 914 F.Supp. at 1511. The Supreme Court has cautioned, however, that the FCA is not designed to punish every type of fraud committed upon the Government. *United States v. McNinch*, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). The FCA is not intended "to operate as a stalking horse for enforcement of every statute, rule, or regulation." *Pogue*, 914 F.Supp. at 1513. To hold that the mere submission of a claim for payment, without more, always constitutes an "implied certification" of compliance with the conditions of the Government program seriously undermines this principle by permitting FCA liability potentially to attach every time a document or request for payment is submitted to the Government, regardless of whether the submitting party is aware of its non-compliance. While ignorance of the law is usually no excuse to justify one's actions, the FCA requires that a false statement be made with actual knowledge, deliberate ignorance, or reckless disregard of the state-

---

5. Relator's reliance upon *United States ex rel. Sanders v. East Ala. Healthcare Auth.*, 953 F.Supp. 1404 (M.D.Ala.1996) is misplaced to support his contention that mere operation of Family Care/CHH without a CON is a "false statement" within the meaning of the FCA. *Sanders* involved the knowing submission of a home health agency's claim for reimbursement which

falsely represented the agency's licensure by the state. Here, the Defendants do not falsely represent their attainment of a license.

6. Although the parties included a portion of this form in their stipulation of fact, that copy only contains the front side of the form.

ment's falsity. *Ab–Tech*'s holding appears to ignore this well-established principle, and the Court declines to follow this case.

Even if the Court were to follow *Ab–Tech* and hold that Defendants' billings created an implied certification of compliance with federal law, Relator has failed to meet his burden on summary judgment of proving that payment of federal Medicare funds is conditioned upon certification of compliance with state laws and regulations. The relevant statute and regulation simply state that such compliance is a condition of participation in the Medicare program, but no evidence has been presented suggesting that certification of such compliance is a condition to *payment,* the *sine qua non* of FCA liability.

Relator next contends that Defendants' annual cost reports submitted to the Government also trigger FCA liability because they contain certifications of compliance with state laws. Relator has produced a copy of Form HCFA 1728, upon which Defendants make their annual cost reports to the Government, and which contains the following certification: "I HEREBY CERTIFY that ... I am familiar with the laws and regulations regarding provision of health care services, *and that the services identified in this cost report were provided in compliance with such laws and regulations*" (emphasis supplied). As in *Thompson,* however, the factual record does not demonstrate that this certification in the annual cost reports was a prerequisite to obtaining Government payments. Relator has failed to prove otherwise, as he must in response to Defendants' summary judgment motion and at trial.

 Relator. finally contends Defendants violated the FCA when M.S.A. president Ronnie L. Young stated in a July 1993 letter to Maryland's licensing office that Family Care would continue to operate in the same manner after MSA's acquisition. Relator maintains this statement was false because after the acquisition, Family Care subsequently changed the composition of its Board of Directors. Even if this statement were false at the time it was made, the statement was not a prerequisite to receiving federal funds, and in any event was not made to an official of the federal government to obtain

payment. This statement simply provides no basis upon which to premise FCA liability. Summary judgment for Defendants is therefore appropriate.

Assuming *arguendo* that Defendants violated the CON requirements and therefore made false statements in violation of the FCA, summary judgment for Defendants is also appropriate in this case because Relator offers no evidence of Defendants' knowledge of the false statements. As mentioned above, the requisite intent for FCA liability "is the knowing presentation of what is known to be false", and the FCA's knowledge requirement can be satisfied by actual knowledge, by acting in deliberate ignorance of the truth or falsity of the information, or by acting in reckless disregard of the information. Relator offers not a scintilla of admissible evidence establishing Defendants' knowing presentment of a statement known to be false.

## V.

The Court holds that Defendants did not violate Maryland's CON requirement as a matter of law, and therefore could not have violated the FCA, by failing to obtain a CON after repeal of the CON exemption under which Family Care was licensed, by changing the composition of Family Care's Board of Directors after that time, or by treating non-HMO patients. Regarding relocation of the CHH facility, the Court finds Relator has unduly delayed in raising this issue, and in any event the Court finds Maryland's CON statute does not apply to the "relocation" of a home health care agency. The Court also holds Defendant CHH/Family Care did not violate the CON requirement as a matter of law in connection with MSA's 1993 acquisition of Family Care because Family Care continued in existence and did not "purchase" or acquire a health care facility. The Court further finds that Relator has offered no evidence in response to Defendants' motion establishing MSA's violation of the CON requirements in connection with the acquisition. Finally, even if Maryland's CON requirement was violated, Relator proffers no

proof that certification of compliance with this law was a condition precedent to receiving Medicare funds, or that Defendants knowingly made false statements.

Based upon the foregoing analysis, the Court will deny Relator's summary judgment motion, grant Defendants' summary judgment motion, and enter judgment on behalf of Defendants.