**UNITED STATES of America ex rel. Sara ORTEGA, Plaintiff,**

v.

**COLUMBIA HEALTHCARE, INC., et al. Defendants.**

**No. 99CV3305(RCL).**

United States District Court, District of Columbia.

Jan. 15, 2003.

Robert P. Trout, Amy Berman Jackson, John Thorpe Richards, Jr., Trout & Richards, PLLC, Washington, Thomas A. Spieczny, El Paso, TX, for Relator.

Roger S. Goldman, Jennifer C. Archie, Alice S. Fisher, Latham & Watkins, Washington, DC, Walter P. Loughlin, Latham & Watkins, New York City, for Defendants.

Michael F. Hertz, Joyce R. Branda, Jonathan L. Diesenhaus, J. Chris Larson, Civil Division, U.S. Department of Justice, Washington, DC, for U.S.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on motions practice seeking the dismissal of Relator's complaint. The United States filed a motion to dismiss [40], Relator opposed [122] and sought leave to file under seal [125] (which HCA opposed [172]), and the United States replied [142].[1] Relators in other cases pending before this Court filed statements of interest. Relator

Thompson filed a memorandum in support of the government's motion [133], as did Relator King [148]; Relator Ortega responded [182], and Thompson replied [190]. King sought leave to respond to Thompson's reply [369]; Thompson then sought leave to respond [412] to King's statement. Defendant HCA also filed a motion to dismiss [82], Relator responded [145] and sought leave to file her opposition under seal [151], HCA replied [183], and the United States filed a statement of interest [202]. After a settlement was negotiated with respect to various cases in this MDL, the United States filed a motion to expedite consideration of pending suggestions of dismissal [739] on first-to-file grounds in four cases, to assist in apportioning the settlement proceeds.

Upon consideration of the case, the parties' motions and responses, and the law, the United States' motion to dismiss will be granted; its motion to expedite will be granted as to this case. HCA's[2] motion to dismiss will be granted. Thompson and King will be granted leave to file responses. Relator's motions to file under seal will be denied.

### I. Background

This case is part of the multi-district litigation of False Claims Act *qui tam* suits against HCA and various related entities. The United States seeks dismissal of kickback allegations in this case under the first-to-file bar of the False Claims Act (FCA), 31 U.S.C. § 3730(b)(5). Once a *qui tam* suit has been filed under the FCA, the first-to-file bar prohibits any subsequent

---

1. The United States also filed a notice of withdrawal of intervention as to specific allegations in Count III, which Relator opposed, arguing that once it intervened the United States could not withdraw. This dispute was mooted when Relator and HCA reached a

settlement as to Count III and stipulated to its dismissal.

2. The Court will refer to defendants collectively as "HCA."

would-be relator from filing a case based on the same underlying facts.

Relator filed this suit under seal June 8, 1995 in the Western District of Texas, alleging that HCA-owned Columbia Medical Center West, an El Paso hospital, fraudulently procured certification from the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) and that such fraud excluded it from participation in Medicare, rendering claims submitted for Medicare reimbursement false. The original complaint also contained a brief allegation that defendants engaged in fraudulent accounting practices by booking costs from the Rehabilitation Center to the Back Care Center to raise the base for Medicare funding. On December 18, 1997, Relator filed a first amended complaint, which added two additional allegations. First, Relator outlined a scheme of illegal kickbacks to physicians for referrals. Second, she alleged improper upcoding of treatments to inflate the compensation received from Medicare; the upcoding allegations have been settled and Relator will receive $250,194 from the settlement.

After reviewing the complaints, the United States intervened in the kickback, cost shifting, and upcoding claims of the first amended complaint on September 30, 1998, leaving Relator to pursue the JCAHO certification claim on her own. As noted, the upcoding claims were settled. The United States withdrew its intervention as to the specific allegation of cost shifting, and Relator and HCA subsequently stipulated to a dismissal of the cost shifting claim. The United States filed a suggestion of dismissal of the kickback claims on the ground that complaints predating Relator's first amended described alleged the same kickback scheme. HCA filed a motion to dismiss, asserting in addition to the first-to-file bar that the complaint does not plead fraud with particularity, and that JCAHO accreditation is not a prerequisite to participation in Medicare and therefore the allegedly fraudulently procured certification would not have affected the government's decision to pay claims submitted to it.

## II. First–to–File Bar of 31 U.S.C. § 3730(b)(5)

### A. Legal Analysis of § 3730(b)(5)

■ In crafting the FCA, Congress prohibited certain suits, divesting courts of jurisdiction over them. At issue here is the provision in 31 U.S.C. § 3730(b)(5), which states in its entirety: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.". If an action "based on the facts underlying" a pending case comes before a court, it must dismiss the later-filed case for lack of jurisdiction. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir.2001) (referring to a § 3730(b)(5) challenge as "jurisdictional"); *United States ex rel. Capella v. United Techs. Corp.*, 1999 WL 464536 at *8 (D.Conn.1999) ("Section 3730(b)(5) acts as a jurisdictional bar to a *qui tam* action."); *see also Capella*, 1999 WL 464536 at *4 ("[A]n action must be dismissed for lack of subject matter jurisdiction when a federal court lacks the ... statutory authority to adjudicate the case.").[3]

---

**3.** While an earlier decision examining § 3730(b)(5), which was added in 1986, hazarded an opinion that it was not jurisdictional, that remark was dicta and has not been adopted by any court facing the question. *See*

*United States ex rel. Dorsey v. Dr. Warren E. Smith Community Mental Health/Mental Retardation & Substance Abuse Centers*, 1997 WL 381761 at *2 n. 3 (E.D.Pa.1997).

Section 3730(b)(5) sets up an "exception-free, first-to-file bar." *Lujan v. Hughes Aircraft Co.*, 243 F.3d at 1183; *see also Erickson ex. rel. United States v. Am. Inst. of Biological Sci.*, 716 F.Supp. 908, 918 (E.D.Va.1989) ("The *qui tam* complaint filed first blocks subsequent *qui tam* suits based on the same underlying facts."). The question turns, then, on what constitutes a § 3730(b)(5) proscribed "related action based on the facts underlying the pending action." Litigants have advanced to the courts, and this case is no exception, two different theories on the meaning of this provision. Hopeful would-be relators urge that the test should be whether the later-filed complaint relies on facts identical to those asserted in the first complaint, while defendants advocate a broader "material facts" analysis.

The "identical facts" test fails under both the language and the policy the FCA. Section 3730(b)(5) refers to "related" actions and "underlying" facts, language inconsistent with the rigid precision of an identical facts test. Further, permitting infinitely fine distinctions among complaints has the practical effect of dividing the bounty among more and more relators, thereby reducing the incentive to come forward with information on wrongdoing. This is inconsistent with the FCA's purpose of encouraging whistleblowers to approach the government and file suit as early as possible. *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.* 149 F.3d 227, 234 (3d Cir.1998). Therefore, courts have rejected the identical facts test and held that the later-filed case is barred if it relies on the same underlying facts as the first case.

While no material facts test has been uniformly adopted among the courts, most courts agree on the same basic elements. Some courts have approached the comparison between two cases as a search for "the same material facts." *LaCorte*, 149 F.3d at 234; *Lujan*, 243 F.3d at 1189. Another court expressed the standard as barring claims that "the defendant engaged in the same type of wrongdoing as that claimed in a prior action," *Capella*, 1999 WL 464536 at *9. The *Erickson* court adopted this two-part test: "A subsequently filed *qui tam* suit may continue only to the extent that it is (a) based on facts different from those alleged in the prior suits and (b) gives rise to separate and distinct recovery by the government." *Erickson ex rel. United States v. Am. Inst. of Biological Sci.*, 716 F.Supp. 908, 918 (E.D.Va. 1989). The court in *United States ex rel. Capella v. United Technologies Corp.*, 1999 WL 464536 at *9 (D.Conn.1999), adopted a similar test, holding that a later claim is barred unless "(1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to a separate recovery of actual damages by the government." [4]

---

**4.** *Capella* applied this test taking into consideration whether a host-parasite relationship existed between the two complaints, in which the later suit "receives support or advantage without offering any useful or proper return." *Capella*, 1999 WL 464536 at * 9. This standard was derived from cases analyzing § 3730(e)(3), prohibiting suits based on allegations or transactions already the subject of a civil suit or administrative proceeding in which the government is a party. This analysis is inapposite. The relationship between the first and second suits is irrelevant. It is highly possible, as in *United States ex rel. Dorsey v. Dr. Warren E. Smith Community Mental Health/Mental Retardation & Substance Abuse Centers*, 1997 WL 381761 (E.D.Pa.1997), that the second to file could be a witness in the first *qui tam* case and provide valuable assistance in its prosecution. In such a situation, the second relator (and his complaint) would not be parasitic, but would still be barred.

■ The Court will not adopt either the *Erickson* or *Capella* tests wholesale, but will combine them into the following test: A later-filed *qui tam* complaint is barred unless (1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to separate and distinct recovery by the government. *Capella* supplies the first element. The Court does not adopt *Capella*'s second element because its use of the phrase "actual damages" clouds rather than clarifies the issue. Under the False Claims Act, the government may recover a civil penalty of not less than $5,000 or more than $10,000 for each false claim submitted to it, in addition to three times the damages it sustained. 31 U.S.C. § 3729(a). Thus, actual damages are only one element of the government's recovery, and an examination of whether the government will have a separate recovery under a later-filed suit should take all possible forms of recovery into account.[5] The first element of the inquiry-the material facts analysis-is the most important; an examination of possible recovery merely aids in the determination of whether the later-filed complaint alleges a different type of wrongdoing on new and different material facts.

■ If the later-filed complaint alleges the same type of wrongdoing as the first, and the first adequately alleges a broad scheme encompassing the time and location of the later filed, the fact that the later complaint describes a different time period or geographic location that could theoretically lead to a separate recovery does not save it from the absolute first-to-file bar of § 3730(b)(5). *See Palladino ex rel. United States v. VNA of S. New Jersey, Inc.*, 68 F.Supp.2d 455, 478–79 (D.N.J.1999) (finding a broad allegation in a complaint describing misconduct in Philadelphia sufficient to preempt a later complaint focusing on Runnemede, New Jersey). This is because "such duplicative claims do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir.1998). The strictures of Rule 9(b) limit the preclusive effect of the first-filed complaint to claims that can be pleaded with particularity, thus obviating the danger of opportunistic relators filing unsupported placeholder complaints for the sole purpose of preemption. *Id.*

■ Relator advances two arguments on the interpretation of § 3730(b)(5) that need to be addressed. First, she argues that the government's September 1998 intervention cured § 3730(b)(5)'s first-to-file bar because § 3730(b)(5) should be inter-

---

5. This is particularly true for certain types of implied certification cases. In several kickback cases now pending before this Court, for example, it is alleged that HCA violated the anti-kickback and Stark laws, which prohibit remuneration to physicians for patient referral. Compliance with these laws is a condition for reimbursement under Medicare, and HCA and other defendants impliedly certified compliance with these law in submitting claims to Medicare. In such cases, if the allegations can be proven, even if the services for which claims were submitted were medically necessary and properly provided, there were violations of the FCA. The courts examining these types of claims have acknowledged that actual damages may be difficult to determine and prove, but that will not affect the application of the statutory penalty provisions. *See generally United States ex rel. Pogue v. American Healthcorp, Inc.*, 238 F.Supp.2d 258 (D.D.C.2002); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017, 1047 (S.D.Tex. 1998); *United States ex rel. Pogue v. American Healthcorp, Inc.*, 914 F.Supp. 1507 (M.D.Tenn.1996).

preted in tandem with § 3730(e)(3). Section 3730(e)(3) prohibits the bringing of an action based on allegations or transactions the subject of a civil suit or administrative proceeding in which the government is already a party, and therefore (under Relator's reading) kicks in only after the government has intervened in an FCA suit. Thus, she concludes, because the government intervened in her action before it intervened in Thompson's or King's, Relator's complaint was the first-filed. This torturous reading is unwarranted by the plain language of § 3730(b)(5). The inclusion of both provisions in § 3730 is somewhat confusing; it is unclear what § 3730(e)(3) adds to seemingly broader § 3730(b)(5) in the case of a *qui tam* suit. *See Capella,* 1999 WL 464536 at *8 n. 4 (observing the debate over the distinction between the two provisions). However, there is no indication that § 3730(e)(3) was intended to limit the application of § 3730(b)(5); the simple language of § 3730(b)(5) in no way implicates government intervention as a significant fact. Indeed, subsection (b) is captioned "Actions by private persons," and § 3730(b)(5) refers to the "person" bringing the first action, providing further indication that government intervention is irrelevant to the application of § 3730(b)(5). The Court rejects Relator's suggestion that the date of government intervention is the relevant date for determining which would-be relator was first-to-file. The date the complaint is filed with the court is the date on which it is brought for purposes of § 3730(b)(5). *See* 31 U.S.C. § 3730(b)(5)

("When a person *brings* an action under this subsection, no person ... may ... bring a related action ...." (emphasis added)).

Second, Relator asserts that her December 18, 1997 amended complaint should relate back to the June 8, 1995 filing date for her original complaint, which-she argues-would put her back at the front of the line ahead of Thompson and King.[6] She emphasizes that § 3730(b)(5) states that no person may "bring" an action, but does not prohibit an amendment to a complaint that adds an allegation made in an earlier-filed suit. While she is literally correct that the language of § 3730(b)(5) makes no reference to amendment, it is clearly outside the intent and purpose of § 3730(b)(5) to permit relation back. Section 3730(b)(5) sets up an absolute, first-to-file bar. Amendment does not provide a back door to avoid this exception-free bar.

Moreover, Rule 15, on which Relator relies, does not support her argument that the kickback claims added in her first amended complaint should date back to the date of her original complaint. The relevant portion of Rule 15 permits relation back if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R. CIV. P. 15(c)(2).[7] This standard applies to FCA claims. *See United States ex rel. Colunga v. Hercules Inc.,* 1998 WL 310481 (D.Utah

---

6. This is a dubious proposition. What's good for the goose is good for the gander, and if Relator's amendment were to relate back to her original filing date, so would Thompson's amendments date back to his original filing date-which precedes Relator's by two months.

7. The other two relation-back provisions of Rule 15(c) have no application here. Rule

15(c)(1) permits relation back when permitted by the applicable statute of limitations. The FCA statute of limitations makes no mention of relation back. 31 U.S.C. § 3731(b); *see also United States ex rel. Colunga v. Hercules Inc.,* 1998 WL 310481 at *2 (D.Utah 1998). Rule 15(c)(3) relates to the naming of parties and is similarly inapplicable here.

1998); *United States ex rel. Costa v. Baker & Taylor, Inc.*, 1998 WL 230979 (N.D.Cal. 1998). Relator's original complaint contained allegations only as to JCAHO certification and cost-shifting from the Rehabilitation Center to the Back Care Center. The kickback claims added in the first amended complaint did not arise from the same "conduct, transaction, or occurrence." The JCAHO and cost-shifting claims involve distinct facts and allegations from the kickback claims. Therefore, the kickback claims do not relate back to the filing date of the original complaint, but were brought, for purposes of § 3730(b)(5), on December 18, 1997. *See, e.g., Safir v. Blackwell*, 579 F.2d 742, 745 (2d Cir.1978) (not permitting relation back of an amendment adding an FCA claim where the claim did not arise out of the subject matter of the original complaint).

## B. Factual Analysis of Relator's, Thompson's and King's Complaints

■ The only evidence needed to determine if a complaint is barred by § 3730(b)(5)'s first-to-file rule is the complaints themselves. *LaCorte*, 149 F.3d at 235 n. 6. Because the bar is absolute and across-the-board, no background evidence is relevant to the inquiry. Therefore, Relator's request for an evidentiary hearing is denied.[8] Relator claims that the court "cannot look at the timing of her amended complaint in a vacuum," Relator's Opposition to Government's Motion to Dismiss [122] at 20, but that is exactly what it must do. The Court will examine Relator's complaint and compare it with those of Thompson and King to determine if Relator's complaint would require proof of a "distinct set of facts" from the Thompson and King complaints. *Capella*, 1999 WL 464536 at *10. If not, and the complaints rest on the same material facts, then Relator's complaint is barred by § 3730(b)(5). If so, the Court will then consider whether Relator's complaint would give rise to a separate recovery for the government.

The kickback claim added in Relator's December 18, 1997 First Amended Complaint alleges several types of impermissible kickback behavior: (1) giving physicians limited partnership status interest in hospital ownership, calculated according to referral rate; (2) providing medical directorships compensated according to referral rate; and (3) providing free or reduced rent, recruiting services, hunting and fishing trips, and other travel. Ortega First Amend. Compl. at ¶ 7. The behavior is alleged to have occurred at Columbia Medical Center West, an El Paso Hospital owned in whole or in part by Columbia HCA Corporation, Sun Towers/Vista Hills Holding Company, El Paso Healthcare Systems Limited, and El Paso Healthcare Equities, Inc.

Relator James M. Thompson, whose case is before this Court under Civil Action No. 99–3302, filed his original complaint under seal on March 10, 1995 in the Southern District of Texas. The original complaint describes that kickbacks to induce referrals were provided "in the Cor-

---

**8.** In her briefing, Relator advances several reasons why she should be permitted to maintain her suit (and her chance of receiving a bounty), including that her cooperation predated the filing of Thompson's amended complaint incorporating broad kickback allegations, and that her cooperation began before King's cooperation. She asserts that her suit is not parasitic of Thompson's or King's. Her responses are rich with indignation and reso-

nate with the implication that because her cooperation was freely and generously given to the government, she deserves to share in any recovery against HCA on these issues. While the Court commends Relator for her true spirit of public service in assisting the government in uncovering and prosecuting the alleged fraud, none of these circumstances are relevant to a § 3730(b)(5) analysis.

pus Christi Division of the Southern District of Texas as well as elsewhere" in the form of opportunities to obtain equity interests in HCA hospitals or healthcare organizations; loans; consultation fees used to guarantee physicians' capital interests in HCA; free or reduced rent on office space; free or reduced rate vacations, hunting trips, fishing trips, and other recreational activities; free or reduced rate medical training; income guarantees; and superior or exclusive rights to perform procedures in HCA facilities. Thompson Orig. Compl. at ¶ 26. Thompson's second amended complaint, filed November 1995, alleges kickbacks were paid "in the Corpus Christi Division of the Southern District of Texas as well as elsewhere," and added the following forms of kickback behavior to its earlier allegations: paying consultation fees, rent, or other moneys to induce referrals, and making payments to physicians based on the amount of business provided to HCA. Thompson Second Amend. Compl. ¶ 32. The second amended complaint includes allegations that Thompson spoke with physicians from other areas, including Houston, Fort Worth, and Miami, who allegedly stated that the same types of kickbacks were provided in their areas; on this basis Thompson alleged that kickbacks were given "at other such localities," in addition to the Corpus Christi specific complaints. *Id.* ¶¶ 69–70.[9]

Relator Gary Lee King, whose case is pending before this Court under Civil Action No. 99–3306, filed his complaint in July 1996 in the Western District of Texas. The complaint names Columbia/HCA Healthcare Corporation and El Paso Healthcare Systems, Ltd. as defendants. King was employed at Columbia Medical Center East, King Orig. Compl. at ¶ 12.

Most of the allegations relate to behavior on the the part of El Paso Healthcare Systems (EPHS), an entity that owns both Columbia Medical Center East, where King worked, and Columbia Medical Center West, Ortega's former place of employment and the subject of her *qui tam* complaint. The complaint alleges, inter alia, that EPHS conducted illegal physician recruitment, that physicians had partnership interests in healthcare entities to which they referred patients, that EPHS overpaid physicians for the value of partnerships when the physicians withdrew, that physicians were leased office space at below-market rates, that loans were made to physicians on which payments and delinquency were excused, that physicians and their family members were provided with free or discounted medical service, and that physicians were given discounts and price waivers for laboratory services. *See* King Orig. Compl. ¶¶ 34–51. These benefits to doctors were allegedly given to induce referrals. *Id.* at Part B: Fraudulent Referral Inducements. King included a count titled "Illegal Practices at Other Columbia Locations," alleging that HCA "illegally induced patient referrals to various other Columbia entities around the country," citing instances in Virginia and Florida. *Id.* ¶ 52–54.

Both Thompson and King, then alleged kickback behavior similar to that alleged by Relator, that various benefits were provided to doctors in exchange for referrals. While the list of benefits might vary slightly, the scheme is the same. Both Thompson and King were filed before Relator's First Amended Complaint added the kickback allegations. Relator's complaint fails the first part of the test. It fails to allege a different type of wrongdoing, based on

---

9. The Southern District of Texas has examined Thompson's kickback claims, as embodied in his Fourth Amended Complaint, and found them sufficient to state a claim under the Stark and Anti–Kickback laws. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 20 F.Supp.2d 1017 (S.D.Tex.1998).

different material facts than those alleged in the earlier suit. The same type of wrongdoing is alleged in Relator's, Thompson's, and King's complaints. The material facts are the same.

Relator tries to save her complaint because the allegations are made as to the El Paso Columbia Medical Center West hospital, which is not specifically mentioned in either Thompson's or King's complaint. However, a variation in geographic location is not the type of "material fact" that will protect a complaint from § 3730(b)(5)'s first-to-file bar. *Palladino v. VNA of S. New Jersey, Inc.,* 68 F.Supp.2d 455, 478–79 (D.N.J.1999) (finding a broad allegation in a complaint describing misconduct in Philadelphia sufficient to preempt a later complaint focusing on Runnemede, New Jersey). Moreover, even if this were not the case, Relator's specific location would indeed be specifically preempted by King's inclusion of EPHS, an entity that owns both Columbia Medical Center West and Columbia Medical Center East, as a defendant. A comparison with either Thompson or King reveals that Relator was not the first to file the kickback allegations contained in her First Amended Complaint, and those allegations are therefore barred by 31 U.S.C. § 3730(b)(5).[10]

### III. JCAHO Claims

After the United States moved to dismiss Relator's kickback claims on first-to-file grounds, HCA filed a motion to dismiss Relator's complaint. As to the kickback claims, HCA agreed with the government that they were barred by the first-to-file rule. Relator's other live claim is that HCA fraudulently obtained JCAHO certification.[11] In her complaint, Relator explains that that she, along with other employees, was asked to falsify minutes and records of meetings to reflect that certain discussions had taken place-when in fact they had not-that were necessary to fulfill JCAHO requirements. Relator asserts that JCAHO certification is a prerequisite for participation in Medicare. Fraudulently obtaining certification, Relator argues, renders Medicare claims fraudulent because such claims impliedly certify compliance with Medicare regulations, including JCAHO certification. HCA argues that JCAHO certification is not a prerequisite to participation in Medicare, and that fraudulently obtaining JCAHO certification would not affect the government's decision to pay, the essential element of an implied certification case. Furthermore, HCA argues, Relator's claims do not meet the heightened pleading requirements of Rule 9(b), which mandates that claims of fraud be plead with particularity.

### A. Pleading Fraud with Particularity

Rule 9(b) requires the circumstances constituting fraud to be stated with partic-

10. Thompson and King took the filing of the United States' motion to dismiss as an opportunity to battle over whether one of their complaints will likewise be barred by § 3730(b)(5). That issue is not before the Court. *Cf. United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,* 149 F.3d 227, 237 (3d Cir.1998) (noting that a would-be relator had no standing to test the priority among earlier-filed complaints). Therefore, at this time the Court observes only that either complaint is sufficient to bar Relator's, and makes no further determination. Because they contain information useful to the decision of the issue before it, the Court will grant Thompson and King leave to file their various replies.

11. HCA's opposition seems to confuse a court order with a claim of privilege. It states, "There is no reason proffered to withhold procedural information about the procedural history of the case," and goes on to discuss privilege. A statutory provision or court order sealing a case is certainly reason enough to withhold information, lest the attorney revealing the information be subject to contempt.

ularity. HCA argues that Relator's complaint did not state her JCAHO claim with particularity, because it does not articulate exactly what information from the minutes was false or contrived, that Relator does not identify the relationship between the false minutes and the results of the accreditation survey, and that Relator does not give the particulars of the allegedly false claims submitted by HCA. The purpose of Rule 9(b) is to ensure that defendants have sufficient notice of the claims against them to prepare a defense.[12] The Fourth Circuit has counseled in the context of the FCA, "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999). The D.C. Circuit has taken a generous approach to pleadings. This approach is exemplified in *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C.Cir. 2000), which holds that a complaint is not deficient even if it fails to set out a prima facie case as an initial matter. *Sparrow*, 216 F.3d at 1113, 1114. While *Sparrow* notes that Rule 9(b) requires more particularity than Rule 8, which governed *Sparrow*, *id.* at 1118, Rule 9(b) does not completely vitiate the liberality of Rule 8. *See United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385–86 (D.C.Cir.1981).

The D.C. Circuit addressed how Rule 9(b) applies to *qui tam* cases in *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C.Cir.2002). The court noted that under 9(b) the circumstances that must be pleaded with specificity include " 'time, place, and contents of the false representations.' " *Id.* at 552 (citations and emphasis omitted). The relator in that case had alleged only that non-conforming goods had been delivered, not that the defendants had made false claims as a result of delivery of the non-conforming goods. *Id.* at 551. The court ruled that the relator "must set forth an adequate factual basis for his allegations that the Contractors submitted false claims ..., including a more detailed description of the specific falsehoods that are the basis for his suit." *Id.* at 552.

■ Here, the description of the fraudulent scheme is sufficiently specific. Relator alleges that minutes were falsified in order to receive JCAHO certification. She lists the names of the committees whose minutes were falsified, Ortega First Amend. Compl. ¶ 12, the names of those involved in the falsification, *id.*, and describes individual instances in which the minutes were falsified. *Id.* ¶¶ 13–14. However, Relator's First Amended Complaint suffers from the same deficiency as that in *Totten*. Presumably, Relator's theory is that all claims for Medicare reimbursement that were submitted while the hospital was holding a fraudulently obtained JCAHO certification were tainted with that fraud. However, this theory does not appear in her complaint. The complaint lays out the fraudulent scheme, but fails to take the final step of connecting it with claims for payment. Relator "must aver that the defendants actually submitted false *demands for payment*." *Totten*, 286 F.3d at 544 (emphasis original). The ordinary remedy for this sort of

---

12. Other policy reasons behind Rule 9(b) are "to discourage meritless fraud accusations, to prevent serious damage to the reputation of the defending party from baseless claims, and to deter claimants from adding broad fraud allegations to induce advantageous settlements." *Shekoyan v. Sibley Int'l Corp.*, 217 F.Supp.2d 59, 73 (D.D.C.2002). The parties have not indicated that these policies are implicated here.

deficiency is to allow cure of such a pleading flaw by amendment. *Id.* at 546. However, as in *Totten,* this would be futile, as Relator's JCAHO certification theory is insufficient to state a claim under the FCA.[13]

### B. JCAHO Certification and the Decision to Pay

▮ The FCA does not provide a remedy for every violation of a statute or regulation. It applies "only if compliance with the statutes or regulations was a prerequisite to gaining a benefit, and the defendant affirmatively certified such compliance." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 787 (4th Cir.1999). Such compliance may be impliedly certified, "but only where certification was a prerequisite to the government action sought." *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.,* 214 F.3d 1372, 1376 (D.C.Cir.2000). That is, recovery may be had under the FCA for an implied certification where if the government had known of the violation when presented with the claim for payment, it would not have paid the claim. Relator urges that JCAHO certification is a prerequisite to participation in Medicare. Thus, the logic goes, if a hospital's JCAHO accreditation is fraudulently obtained, it is essentially non-accredited, and therefore ineligible to participate in Medicare, and the government would not pay the claims submitted by an ineligible provider if it knew the true situation.

▮ HCA contests that JCAHO certification is required to participate in Medicare. As the parties explain, the Medicare regulations provide myriad conditions and requirements, running from dietetic services to infection control. 42 C.F.R.

§§ 482.1 *et seq.,* 489.10. To participate, a healthcare entity must be in compliance with all of these. 42 C.F.R. 488.3(a). However, the federal government does not monitor compliance with the conditions. Instead, the regulations provide various means through which providers can be deemed in compliance with the regulations and eligible to participate in Medicare. The entities authorized to determine compliance include private national accreditation programs, 42 C.F.R. § 488.6, states, 42 C.F.R. § 488.10, and JCAHO and the American Osteopathic Association, 42 C.F.R. 488.5(a). Thus, while JCAHO accreditation automatically confers eligibility to participate in Medicare, it is not a prerequisite. The government will pay a claim submitted by a provider that is not JCAHO-accredited; it follows that lack of proper JCAHO certification would not affect the government's decision to pay in the sense required by the False Claims Act. This is further supported by the Center for Medicare and Medicaid Services' State Operations Manual, which provides that when a hospital loses its JCAHO certification, the state agency is to schedule a survey and recertify the institution, rather than providing for automatic disqualification. *See* Centers for Medicare & Medicaid Services, State Operations Manual § 2022, *available at* http://cms.hhs.gov/manuals/pub07pdf/part–02.pdf.

Relator argues that even if JCAHO certification itself is not a prerequisite, HCA could not have received accreditation through any means had it not falsified the minutes, because the compliance standard is the same regardless of the accreditation method. This is an appealing argument, but one that has no basis in the language

---

**13.** After settlement of an upcoding claim in 2001, stipulated dismissal of the cost-shifting claim, and dismissal on first-to-file grounds of the kickback claim, the JCAHO claim is all that remains.

of Relator's First Amended Complaint. Moreover, the Court must return to the mandate that the FCA does not provide a remedy for every regulatory violation. *Siewick*, 214 F.3d at 1376. The implied certification theory creates an expansive reading of the FCA. While this reading-to-which the Court adheres-is not unwarranted, and furthers the statute's purpose of uncovering fraud against the United States, it is not infinitely expansive. Compliance with the Medicare laws and the regulations promulgated under them is a requirement to participate in Medicare, JCAHO certification is not. If Relator's allegations are true, the government is unlikely to take a sanguine view of HCA's behavior, and consequences will likely follow. However, liability under the FCA will not be one of those consequences.

## IV. Relator's Motions to File Under Seal

Relator filed two motions, [125] and [151], seeking leave to file various of her responses under seal. The responses describe the procedural history of the case, including the time period when the complaint was under seal. *See* 31 U.S.C. § 3730(b)(2),(3) (requiring a *qui tam* complaint to be filed under seal to permit the government to evaluate that allegations and determine whether it will intervene). The basis of the motions is Relator's belief that these portions of the record remain sealed. HCA opposed the motions [172], arguing that it is entitled to analyze the documents and use them in presenting its argument that § 3730(b)(5) deprives the Court of subject matter jurisdiction over Relator's complaint.

To the extent any part of this case remains under seal, that seal will be vacated.

The United States filed an application to unseal the case on December 1, 2000 [99ms432 # 94], which the Court granted [99ms432 # 141]. The government's December 2000 motion sought unsealing of "this proceeding and the complaints in the cases that are a part of it," but requested that all other pleadings filed while the case was under seal remain under seal. The Court's order unsealed the complaints and prospectively unsealed future proceedings in the case, but maintained previous proceedings under seal. In the present case, the United States did not file a position on HCA's opposition to Relator's motion to file under seal, nor did Relator file a reply noting any dissent to HCA's suggestion that the Court unseal previous proceedings in this case. There appears to the Court no reason to maintain any portion of this case under seal. The United States' criminal investigation into the HCA matters has been concluded, and the parties are on the eve of settlement with regard to the kickback claims. Therefore, the seal remaining on proceedings prior to December 14, 2000 will be vacated, and Relator's motions to file under seal will be denied.

Because the motions to file under seal are denied, HCA is entitled to receive unredacted versions of Relator's filings. HCA may file a motion for reconsideration with this Court if the information contained in the unredacted motions affords it new avenues for relief. However, because HCA's motion to dismiss is granted by the order accompanying this memorandum opinion, the Court hopes it will show forbearance in this matter. .

## V. Conclusion

Relator's complaint will be dismissed with prejudice in its entirety.[14] The kick-

---

14. The complaint will be dismissed without prejudice against the government, which is not subject to the constraints of § 3730(b)(5).

back portion of the complaint is barred by the Thompson and King complaints under the first-to-file rule of § 3730(b)(5). The JCAHO allegations do not state a claim under the FCA, because JCAHO certification is not a prerequisite to participation in Medicare, and thus defective JCAHO certification would not affect the government's decision to pay Medicare claims. The United States' motion to dismiss [40] will be granted as to Count I and denied as moot as to Count III. HCA's motion to dismiss [82] will be granted as to Counts I and II and denied as moot as to Count III. Relator's motions to file memoranda under seal, [125] and [151], will be denied, and the seal on proceedings prior to December 14, 2000 in this case will be vacated. James M. Thompson's motion for leave to respond [412] will be granted, as will Gary Lee King's [369]. The United States' Motion to Expedite [739] will be granted as to this case.